SUPREME COURT. At Chambers, Rochester, October 2, 1858. Before *T. R. Strong*, Justice.

IRA STOUT, plaintiff in error, *v.* THE PEOPLE, defendants in error.

A writ of error, to review in the Court of Appeals a judgment rendered in the Supreme Court, on an indictment for a capital offence, cannot be issued, unless allowed by a judge of the Court of Appeals, or justice of the Supreme Court, or a county judge; and such writ of error will not stay or delay the execution of such judgment, or of the sentence thereon, unless it be expressly directed in the allowance that the writ shall operate as a stay of proceedings.

Such writ ought not to be allowed and the proceedings stayed, unless it is probable an error has been committed, or unless real doubt may well be entertained as to the correctness of the decisions sought to be reviewed.

A question of fact on a principal challenge, in the absence of consent to a different mode of trial, is properly triable before triers appointed by the court. It is competent, however, for the parties, by consent, to waive the appointment of triers, and submit to the court the question of fact for its decision; and such has become the general practice.

The determination of the court, on a question of fact thus submitted, cannot be excepted to, and is final. It stands in that respect upon the same footing as if it had been made by triers, and cannot be reviewed on error.

Mere hypothetical opinions, though legal evidence to be considered on a challenge for favor, will not sustain a challenge for principal cause.

On the trial of an indictment for murder, evidence on the part of the prosecution of a fact tending to prove a motive for the commission of the homicide, ought to be received, although the fact thus offered to be proved, amount itself to a distinct felony.

THIS was an application made at chambers to the Hon. Theron R. Strong, one of the justices of the Supreme Court, for the allowance of a writ of error with stay of proceedings. The facts are sufficiently stated in the opinion deciding the application.

*J. N. Pomeroy*, for the plaintiff in error.

*C. Huson, Jr.* (District Attorney), for the People.

T. R. STRONG, J. By the Revised Statutes, a writ of error upon a judgment rendered on any indictment for a capital

Stout *v.* The People.

offence, cannot be issued unless allowed by one of the justices of the Supreme Court; and a writ of error, when allowed, will not stay or delay the execution of such judgment, or of the sentence thereon, unless it be expressly directed in the allowance that the writ is to operate as a stay of proceedings. (2 *R. S.*, 740, §§ 14, 15.) Under the judiciary act of 1847, the power to allow the writ and direct a stay of proceedings, is extended to a judge of the Court of Appeals and to a county judge. (1 *Laws* 1847, 322, § 11.) The rule of decision upon an application for the allowance of the writ and a stay of proceedings, is not prescribed by statute, but I think the opinion of the Legislature, as to the proper rule in the case, is to be found in the provision of the statute for a stay of proceedings on exceptions taken in the Court of Oyer and Terminer, or Court of Sessions, on the trial of an indictment. That provision is, that a bill of exceptions being settled and signed, if the officer specified in the statute shall certify on such bill, "that, in his opinion, there is probable cause for the same, or so much doubt as to render it expedient to take the judgment of the Supreme Court thereon, such certificate, on being filed with the clerk of the court, shall stay judgment on such indictment until the decision of the Supreme Court taken upon such exception." (2 *R. S.*, 736, § 23.) The rule here given is a reasonable one to adopt in cases like the present, refusing, as it does, the allowance of a review of decisions upon points which are frivolous, or clearly untenable, and at the same time permitting the re-examination of questions, in relation to which there is ground for fair doubt and difference of opinion. The policy of the requirement of an allowance of a writ of error to warrant the issuing of it, and of an express direction of the officer allowing the writ that the writ be a stay of proceedings, to give it that effect, is, doubtless, that the writ may not be made a means of useless and injurious delay of execution of the judgment. Where it is probable an error has been committed, or real doubt may well be entertained as to the correctness of decisions which it is sought to have reviewed, the writ is to be allowed and the order granted ; but in no other case.

Taking this rule as a guide, and anxiously desiring to do no injustice to the plaintiff in error, I have carefully examined the grounds of the present application; and I proceed to state briefly my views in relation to them:

1. One of these grounds is an alleged error in sustaining a decision of the court below overruling a challenge to a juror. One Tower, on being called as a juror, was challenged by the defendant below, who is now the plaintiff in error, for principal cause, on the ground that he had formed and expressed an opinion touching the guilt of the prisoner; and the district attorney traversed the challenge. This traverse put in issue the fact alleged in the challenge, and made it necessary to try the question whether the juror had formed such an opinion. The legal mode of trial, in the absence of consent to a different mode, would have been by triers appointed by the court to receive the evidence which should be offered in regard to it, and decide the question. Upon their decision, if the triers found that the juror had formed an opinion in the case, the question of law involved in the challenge, whether the fact of such an opinion constituted a disqualification as a juror, would have been for the court to determine. The decision of the triers as to the fact, would not have been the subject of exception, or review on error; but it would have been otherwise as to the decision by the court on the law arising upon the fact found by the triers. If the triers found against the formation of an opinion by the juror, the challenge would of course have been overruled, as unsupported in fact. It was competent, however, for the parties, by consent, to submit to the court the trial of this question of fact, waiving the appointment of triers; and that has come to be a very general practice, and it appears to have been pursued in this case. The effect of referring to the court the ascertainment of the fact on which the challenge rests, in such cases, is that the court is substituted for triers; it is made the trier of the question with the like incidents and consequences as if triers had been appointed by the court, and they had tried the issue. The determination by the court of the fact cannot be excepted to, and is final. But its decision

of the question of law on the fact, may be excepted to, and brought under review on error.

The challenge having been traversed as above stated, in support of it, Tower, the juror, was sworn and examined as a witness, and testified: "I have read part of the accounts of the transaction in the newspapers; I think I have an impression as to the defendant's guilt or innocence; I rather think I have formed an opinion; I presume I have expressed it; I think I retain it." On his cross-examination he testified: "I formed an opinion if the accounts were true; I rather thought that they were true; so far as I read I gave them credence." On his re-direct examination he testified: "I rather think I believed the accounts true; it might or might not require evidence to remove my impression of the defendant's guilt." To the court: "I did not arrive at a definite opinion." No further evidence was given on the challenge. The court thereupon overruled the challenge, to which an exception was taken. The juror was sworn, and sat as such during the trial.

This evidence of the juror presents the state of his mind in regard to an opinion as to the guilt or innocence of the defendant below; the evidence is wholly uncontroverted; and the only question was, whether the state of the juror's mind, in respect to such an opinion, as exhibited by this evidence, rendered the juror incompetent. There was no question of fact upon the evidence, but only one of law upon the legal effect of the evidence as to the competency of the juror. This view of the true question on the juror's testimony, is fully supported by the case of *Ex parte Vermilyea and others* (6 *Cow.*, 555), and *The People* v. *Vermilyea* (7 *Cow.*, 108), and other cases. And in that view, as is above shown, and as was held in the case first cited, the decision of the challenge might legally be excepted to, and be re-examined by a higher tribunal when properly brought before it.

The question of the correctness of the decision overruling the challenge, is therefore fairly in the case, and hence it is necessary to examine it so far as to see whether there is probable cause for believing it erroneous, or there is so much doubt

in regard to its accuracy that it is expedient to allow it to be reviewed.

The substance of the testimony of the juror is, that he had read in the papers part of the accounts of the transaction; that so far as he read them he gave them credit; that he formed an opinion in the case dependent on the truth of the accounts, and had expressed it; but it was not a definite opinion. The grammatical and legal import of this testimony, is, that the juror had a hypothetical opinion as to the guilt of the accused; that is, that the accused was guilty if the accounts he had read were true; but whether the accounts were true or not, he had no distinct certain conviction. It expresses a state of mind which would be produced in any intelligent man, a stranger to a transaction and the parties connected with it, in regard to the facts of the case, who should read in a book or newspaper an account of the case supporting those facts, and apparently entitled to credit. The account would be received as true, and a conclusion formed from it, if true; but this conclusion would depend wholly upon its supposed truth, and as to its truth only a mere supposition would be entertained. This would not ripen into a clear and fixed conviction, unless verified by satisfactory evidence. The law does not pronounce persons, whose minds are thus affected in respect to a case, disqualified to act as jurors upon the trial of it; and there does not appear to be any good reason why it should do so. There is nothing in that state of mind which necessarily implies bias, and from which the law adjudges the juror not indifferent between the parties. The mind, in such a case, is in a condition to receive and decide impartially upon the evidence presented to it, and that is the material consideration on the trial of a challenge like that in question. .

These remarks are made solely in reference to challenges for principal cause, for having formed an opinion, and such is the challenge in the present case. A principal cause of challenge is where the cause affords a manifest presumption of partiality; where the law implies partiality from the ground of challenge, without inquiring, if the ground be proved, whether in fact

Stout *v.* The People.

the juror is biased. It adjudges, from the cause alleged and proved, that he is so, and excludes him as a juror. An opinion to sustain a challenge for principal cause, must be, in the language of the books, a fixed and absolute opinion. It is only opinions of that character which the law regards as necessarily implying partiality. It does not thus regard mere hypothetical opinions. Although opinions of the latter character are legal evidence upon the trial of a challenge for favor, where the question of bias is a question of fact, they do not constitute a principal cause of challenge.

I am satisfied that the opinion proved in support of the challenge in this case, was merely hypothetical; that it did not sustain the challenge, and that the challenge was properly overruled.

The remark of the juror, in the course of his examination as a witness, that "it might or might not require evidence to remove his impression of the defendant's guilt," does not strengthen, but rather weakens, the effect of the whole evidence to sustain the challenge. It shows the juror had no fixed opinion. A fixed opinion would require evidence to remove it. And it was for the party interposing the challenge to prove such an opinion.

2. The only other position urged in support of this application is, that the court below, at the trial, erred in admitting evidence tending to establish an incestuous connection between the accused and his sister, Mrs. Littles. The indictment was against the accused and Mrs. Littles jointly; and evidence was given on the part of the People proving, in addition to the homicide, difficulties between Mrs. Littles and her husband, upon whom it was alleged in the indictment the crime was committed, and implicating both the defendant below and Mrs. Littles in the killing of the deceased, after which the district attorney put the following question to a witness: "Do you know whether Ira and Mrs. Littles ever slept together?" This question was objected to; the objection was overruled, and an exception taken. Evidence was then given on the part of the People that Ira and Mrs. Littles were in bed together on different

occasions, and that on one occasion the deceased saw them in that situation, and made no complaint.

The object of this evidence manifestly was, to prove a motive in the mind of the defendant below to take the life of the deceased; that the homicide was premeditated by him, and therefore that his participation in it was murder. It is very clear, I think, that the evidence strongly tended to establish that part of the case, and was rightly received for the consideration of the jury. If the relation of brother and sister had not existed between the defendant below and Mrs. Littles, no question could exist, as the case stood when the evidence was allowed, as to the right of the People to prove illicit intercourse between them for the purpose to which the evidence under consideration was offered, whether the deceased knew of it or not. The motive which it tended to prove was, to remove the deceased out of the way, to relieve Mrs. Littles from her difficulties with him, and to afford more full and free and safe opportunity to him for vicious intercourse with her. I am not able to perceive how the fact of that relationship can vary the case as to the propriety of such evidence. The evidence was of the same character as that received to prove the difficulties referred to, and the nature and extent of them. Any evidence proving the relations of intimacy between the defendant below and his sister, was clearly competent on this question of motive, as tending to show influences on his mind to aid her in her troubles, and for that purpose to commit the offence charged. The weight of this evidence was for the jury; it was admissible as tending to prove an important fact in the case; but it was the duty of the court in charging the jury, to submit, in connection with the evidence, proper instructions, limiting its effect to the point upon which it was received. There is no complaint that such instructions were not given.

Upon neither of the grounds on which this application is based, is the case, in my judgment, brought within the rule above stated, as proper to control the decision as to the allowance of a writ of error. I am constrained, therefore, to decline to allow the writ.