# THE PEOPLE *v.* MAHONEY.

DEFENDANT, indicted in the Court of Sessions of San Francisco for larceny, moved for a change of venue on his affidavit that the presiding Judge of the Court was in 1856 an active member of the "Vigilance Committee," which had banished defendant from the State on grounds not connected with the present charge, and that hence he could not have a fair and impartial trial : *Held,* that the Judge was not disqualified to sit on the trial.

A Court is not compelled to change the venue in a criminal case on the unsupported affidavit of defendant that he cannot have a fair and impartial trial because he is the victim of a general prejudice in the county.    Nor does a failure to get a jury on the first day of trial, because of opinions formed, so confirm the affidavit of defendant as to make it error to refuse to change the venue upon a renewal of the application.    The Court is to exercise a reasonable discretion as to a change.

Where a juror stated in substance that he had read in the papers about defendant, and of his being sent away by the Vigilance Committee of 1856, and that his impressions, derived from the papers and from hearing about defendant, were and now are that he was a bad man, and that he supposed it would· require evidence to remove these impressions ; that he should think defendant more likely to be guilty of a crime than a man of whom he had never heard these things ; that he was not conscious of any prejudice or bias against defendant which would prevent his giving him a fair trial ; and that he would endeavor to be governed by the evidence : *Held,* not to be sufficient ground of challenge for *implied bias.*

The charge to the jury in this case, on the question of recent possession of stolen goods : *Held,* not to be wrong.

APPEAL from the Court of Sessions of the City and County of San Francisco.

People *v.* Mahoney.

Indictment for grand larceny—the time laid being December, 1859.

On the twenty-eighth of January, 1860, defendant moved for a change of venue upon the following affidavit, to wit:

"Lewis Mahoney, now of said city and county of San Francisco, being duly sworn, doth depose and say : That he is now in the county jail of said county, entirely unable to procure bail, upon a charge of grand larceny, upon which charge he has been indicted in said county, has been arraigned and plead not guilty to said indictment before said Court. And this deponent further says, that on or about the first of June, A. D. 1856, while this defendant was pursuing his lawful business, as a citizen of the county of Alameda, in said State, this defendant was unlawfully, and without color and authority of law, seized and arrested by an unlawful body of the citizens of said county, and by them, upon a false accusation of having committed certain crimes and misdemeanors, restrained of his liberty, and for the space of ten days imprisoned, and finally forcibly transported to the city and county of San Francisco, and placed on board a steamship about to depart from this State. That this defendant having lawfully escaped from said steamship, and from the hands of said unlawful body of the citizens of said county of Alameda, remained in the said city and county of San Francisco, conducting and deporting himself as a good and law-abiding citizen. And this defendant further says, that while remaining in said place as last aforesaid, to wit: on or about the eleventh day of June, A. D. 1856, this defendant was unlawfully and wrongfully arrested, seized and taken into custody and imprisoned by a body of armed citizens of the said city and county, who were members of a certain very large and formidable body of armed men of the said city and county, unlawfully organized and banded together, commonly known and styled the Committee of Vigilance of San Francisco. And this deponent says, that he was kept so imprisoned by said Committee until on or about the fifth of July, 1856, on which day one Thos. J. L. Smiley, a member of the Executive Committee of said Committee of Vigilance, came to the cell in which this deponent was then and there imprisoned as aforesaid, and informed this deponent, in substance, that he held in his hands

a sentence passed upon him by said Committee, which he read to him, setting forth, among other things, that he was that day to be forcibly taken from said cell and placed on board a steamship and transported from this State, and ordered never to return, under a threatened penalty therein stated of death; and this defendant further says, that he was handcuffed by the said Committee, in pursuance of said sentence, and sent on said steamship out of this State to Panama. And this deponent says, that said Committee of Vigilance was composed of a very large number of citizens of said city and county of San Francisco, of all classes and grades of its citizens, and numbering upon its organized muster roll, as this defendant is informed, and verily believes to be true, about six thousand of the people of the said county, and nearly all of whom were and now are residents of said county, and are competent jurymen, and liable to serve as such. And this defendant further says, that he is informed, and verily believes it to be true, and therefore charges the fact so to be, that the presiding Judge of this Court was a prominent and active member of said Committee; and this defendant further says, that for a long time the power and authority and influence of the said Committee in said county was supreme, paramount and controlling, and their said authority and acts were approved by the great majority of the inhabitants of said county, who were not enrolled members of said Committee, and by whom the said Committee were encouraged and sustained by moral and moneyed influence and sympathy. This defendant further says, that by reason of his said arrest, imprisonment and banishment, as aforesaid, he became, and was, and is now generally known, and unjustly and wrongfully considered a person of very bad repute, and guilty of high crimes and misdemeanors, and this defendant hence became, and was, and is now, the object against whom a great bias and prejudice has arisen in the opinions and minds of a great majority of the people of the said city and county: and that, in consequence of the said foregoing facts and circumstances, this deponent states, alleges and avers that he cannot have a fair and impartial trial before the said Court and any jury to be lawfully selected and impanneled within the said county upon the said indictment now pending against him. And this defendant further

People *v.* Mahoney.

says, that a fair and impartial trial of this defendant cannot be had in the city and county of San Francisco, where the said indictment is pending against him, and this defendant respectfully asks of this honorable Court that an order may herein be made for the removal of this said action to the Court of Sessions of the county of San Mateo, or to some other county which is free from the objections hereinbefore set forth.

His

" LEWIS X MAHONEY.

mark.

" Sworn," etc.

No counter affidavits were offered. The Court overruled the motion until an effort was made to impannel a jury, with leave to defendant to renew it, if it should then appear that an impartial jury could not be obtained, and fixed the trial for January 31st. On that day, the impanneling of a jury was proceeded with, and seven jurors were accepted and sworn—six others having been challenged by defendants for actual bias, and the challenge found " true." During the examination of the jurors, defendant renewed his motion for change of venue, and also again when the panel was exhausted. Overruled, and exceptions taken. The trial was then adjourned to next day, when twelve additional jurors being summoned, defendant again made his motion for a change of venue, on the grounds named in the affidavit above, and that an impartial jury could not be obtained. Overruled and exceptions. During the impanneling of the jury on the second day, one Dundass, on challenge for implied bias, said:

" I have resided in San Francisco since 1851; recollect reading in the newspapers about the defendant, and his being sent away by the Vigilance Committee; recollect hearing about defendant as a bad man, in connection with the Vigilance Committee of 1856; I have impressions upon my mind, derived from the newspapers and from hearing about defendant; it might require evidence to remove these impressions; these impressions are that defendant is a bad man; unless there was some evidence to remove them, I suppose these impressions would remain; I don't think these impressions would make any difference; I have now an impression that he must

People *v.* Mahoney.

have been a bad man, or he would not have been sent off; I should think him more likely to be guilty of a crime than a man against whom I had not heard these things; I am not conscious of any prejudice against the defendant, or any bias which would prevent me from giving him a fair trial; I should endeavor to be governed by the evidence."

The Court found the challenge not true, and the juror was ordered to be sworn, defendant excepting, and subsequently challenging the juror peremptorily—a challenge for actual bias having been tried and found not true.    The whole number of jurors examined was thirty-one.

The Court charged the jury as follows:

" The defendant on trial is charged in the indictment with the crime of grand larceny, said to have been committed in this city and county in December last, the character of which charge is stated in the indictment which has been read in your hearing by the clerk.

" Our statute declares that ' every person who shall feloniously steal, take and carry away, lead or drive away the personal goods or property of another of the value of fifty dollars or more, shall be deemed guilty of grand larceny.'

" The stealing, taking and carrying away, leading or driving away, to constitute a larceny, must have been with a felonious intent, and such intent is presumed to exist when the act is without color of right or excuse.

" The possession of stolen goods soon after they are stolen unexplained, raises a presumption that the possessor is the thief, and is a fact from which a jury may find him guilty if charged with the larceny.

" The possession may be explained, but the explanation should be truthful, and when any is offered, the jury will determine as to the credit which it should receive.

You will determine whether the testimony shows to the exclusion of reasonable doubt that the property named in the indictment was stolen in this city and county at or about the time charged in the indictment, and was the property of Michael Hayes, and if so, whether it was stolen by defendant.

People *v.* Mahoney.

If you find these facts so shown, and further find that the property was of the value of fifty dollars or more, you should find the defendant guilty ; but if all these facts are not so shown, you should acquit him."

Verdict of guilty ; judgment accordingly ; defendant appeals.

*Geo. Barstow*, for Appellant.

1. The overruling of defendant's motion for change of venue first made, was error.   His affidavit, uncontradicted, shows that he could not have " a fair and impartial trial," by reason of the bias of the Court.   (Wood's Dig. 294, sec. 312 ; 1 Bouvier's Law Dic. title Judge ; 2 Waterman on New Trials, 369 ; Starkie on Ev. part 4, 1245–6–7 ; Id. part 3, 28, 18 ; Id. part 1, 25 ; Swift on Ev. 136 ; Civil Prac. Act, sec. 582.)

2. Overruling defendant's second motion for change of venue was error.   Where there is doubt whether an impartial jury can be obtained in the county, the Court will not subject the defendant to the risk of a partial jury. . (*People* v. *Webb*, 1 Hill, 179, and cases there cited ; *People* v. *Vermilyea*, 7 Cow. 179 ; *King* v. *Nothingham*, 4 East. 208 ; 1 Chitty's Crim. Law, Ed. of 1836, 201.)

3. Overruling defendant's motion for change of venue after one day had been spent without obtaining a jury, was error.   *People* v. *Plummer* (9 Cal.) will be found on a careful examination not to be in conflict with this position.

4. It was error to hold the juror Dundass competent.   He was challenged for cause and ought to have been excluded.   (*People* v. *Gehr*, 8 Cal. 359.)

5. The charge of the Court to the jury, as to the recent possession of stolen property, was erroneous.

*Thos. H. Williams, Attorney General*, and *A. Campbell*, for Respondent.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

1. The mere fact that the County Judge belonged to an illegal association, as alleged in the affidavit, whose committee exiled the

defendant on grounds unconnected with the present charge, does not show any legal incapacity to sit on the trial. If the Judge acted illegally on the trial, or denied the prisoner his legal rights, this would be good cause on appeal for the reversal; but we cannot undertake to say that this consideration operated a legal disqualification of the Judge to sit.

2. The mere affidavit of the defendant does not render it obligatory on the Court to change the venue. The statute (Wood's Dig. 294, sec. 314) declares: "If the Court be satisfied that the representation of the defendant be true, an order shall be made for the removal," etc. It is evident, therefore, that the Court is not bound to take for granted the unsupported statement of the defendant, and assign it conclusive effect. A reasonable discretion is to be given to it on this subject, and while we should not be disposed to hold an arbitrary refusal to change the venue as warranted, yet we think the mere unsupported assertion of the defendant, that he was the victim of a general prejudice in the county, is not a conclusive reason for changing the venue, when it is so easy to obtain corroboration of the statement, if it were really true. Nor did the failure to get a jury on a particular day afford such confirmation to the statements of the affidavit as made it error in the Court to refuse to change the venue on the renewal of the application.

There was no error in the refusal to reject the juror, Dundass, for implied bias, nor in the charge to the jury.

Judgment affirmed.