[No. 1215.]

THE STATE OF NEVADA, RESPONDENT, v. CLARENCE GRAY, APPELLANT.

CRIMINAL LAW—CHANGE OF VENUE—PREJUDICE—EXAMINATION OF JURORS BY COURT.—It is proper for a district judge to overrule a motion for a change of venue, on the ground that there exists in the community such a prejudice that the accused cannot obtain an impartial trial, until it can be shown by an examination of a sufficient number of jurors that a fair and impartial jury cannot be obtained.

CONTINUANCE—ABSENCE OF MATERIAL WITNESSES—DUE DILIGENCE.—An affidavit for a continuance, on the ground of the absence of material witnesses, that states that subpœnas for such witnesses had been issued and placed in the hands of the sheriff for service, and that he had not found the witnesses, is defective, when it fails to show whether the officer was informed where such witnesses could be found, or that their attendance could be procured at any subsequent term of court.

IDEM—OFFER OF COURT TO ISSUE ATTACHMENT TO BRING WITNESSES IN.—When the accused is informed where an absent witness could be found, and the court offers to have an attachment issued to bring the witness into court, but he insists upon a continuance, the court may properly proceed with the trial.

JURY—CHALLENGE TO PANEL—BIAS OF OFFICER.—A challenge in writing to a panel of additional jurors, summoned upon an open venire, directed to the sheriff, on the ground "that the deputy sheriff who summoned forty of said jurors was biased against defendant": Held, insufficient, in failing to state whether it was taken for implied or actual bias.

Argument for Appellant.

IDEM—DISPUTED FACTS, HOW TRIED.—When the facts on which a challenge rests are disputed, the proper course is to submit the question to triers; but if neither of the parties ask for triers to settle the issue of fact, and submit their evidence to the judge, and take his determination thereon, the decision will be treated as would the decision of triers—as final— and not subject to exceptions, or review upon appeal.

ATTEMPT TO COMMIT FELONY—ABANDONMENT.—If an attempt to commit a felony be abandoned voluntarily and freely before the act is put in process of final execution, there being no outside cause prompting such abandonment, this is a defense, but if such abandonment is caused by fear of detection, it is no defense if the attempt progresses sufficiently towards execution to be *per se* indictable before such abandonment.

HOMICIDE—MURDER IN FIRST DEGREE—KILLING WHILE ATTEMPTING TO ROB.—Where a party, while attempting to perpetrate a robbery, shoots and kills the party attempted to be robbed, he is guilty of murder in the first degree.

IDEM—INSTRUCTION—No OPTION.—The jury may be instructed that if they find that the accused shot and killed the deceased while attempting to perpetrate a robbery on him, they had "no option but to find the perpetrator guilty of murder in the first degree."

RECESS OF COURT—JURY NOT ADMONISHED—No INJURY.—The failure of the court to admonish the jury "not to converse among themselves, or with any one else, on any subject connected with the trial, or to form or express any opinion thereon until the cause was finally submitted to them," will not affect their verdict when it is clearly shown that the accused was not injured by such failure.

VERDICT—RECOMMENDATION TO MERCY—REFUSAL TO STRIKE OUT.—A recommendation to mercy constitutes no proper part of a verdict; but a refusal of the court to strike it out is not prejudicial to defendant.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

The facts are sufficiently stated in the opinion.

*J. H. McMillan* and *J. A. Hannah*, for Appellant:

I. The court erred in denying the motion for a change of venue. (Crim. Pr. Act, secs. 306–8; *People* v. *Lee,* 5 Cal. 353; *People* v. *Yoakum,* 53 Cal. 566; *People* v. *Bodine,* 7 Hill, 147; *People* v. *Webb,* 1 Hill, 179; *People* v. *Baker,* 3 Abb. Pr. 42; *State* v. *Millain,* 3 Nev. 409.)

II. The court erred in denying defendant's challenge to the panel of jurors brought in on the open *venire.* The court overruled the challenge of its own motion, without such challenge being denied by the prosecution, and without examining the officer, or hearing any other evidence to rebut defendant's affi-

davit. (Crim. Pr. Act, sec. 330; Thomp. and Merr. on Jur., 146, 9; *People* v. *Coyodo*, 40 Cal. 586; *People* v. *Welch*, 49 Cal. 174.)

III. The court erred in refusing to give any of defendant's instructions based upon the theory that when our statute uses the word "murder," it means *murder* and not *homicide*. (Crim. and Pun., secs. 8, 15, 17, 21; Whar. on Hom., secs. 58–63; *State* v. *Dowd*, 19 Conn. 388; *Ex parte Chauncy*, 2 Ashm. 227; *Rhodes* v. *Com.*, 48 Pa. St. 396; *Lane* v. *Com.*, 59 Pa. St. 371; *Com.* v. *Jones*, 1 Leigh, 610; *Souther* v. *Com.*, 7 Grat. 678; Whar. on Hom., sec. 92; *State* v. *Lindsey, ante,* 47.)

IV. Instruction that jury has "no option" is erroneous. It prohibits the jury from fixing the degree of defendant's guilt. (*State* v. *Dowd, supra; State* v. *Lindsey, supra.*)

V. It was error to allow the jury to leave the court without being admonished and not in charge of sworn officers. (Cr. Pr. Act, secs. 380, 381; *Bruckner* v. *State*, 16 Wis. 333; Thomp. and Mer. on Jur., secs. 327, 339; *Gibbons* v. *People*, 23 Ill. 518; *McIntyre* v. *People*, 38 Ill. 514; *Lewis* v. *People*, 44 Ill. 4ɔ2; *McCann* v. *State*, 9 Sm. & M. 466; *Hare* v. *State*, 4 How. (Miss.) 187; *Jones* v. *State*, 2 Blackf. 475, 478; *Com.* v. *Shields*, 2 Bush, 81; Chit. Cr. L. 628; *Staley* v. *Barhite*, 2 Caines, 221; *Evans* v. *State*, 7 Ind. 271; *Caw* v. *People*, 3 Neb. 357, 374; *State* v. *Parrant*, 16 Minn. 178.)

*M. S. Bonnifield* and *S. J. Bonnifield, Jr.*, District Attorney of Humboldt County, for Respondent:

I. The court did not err in overruling the challenge to the panel of jurors. (*People* v. *Renfrow*, 41 Cal. 37; *People* v. *Williams*, 45 Cal. 25;[1] Whar. Cr. Pl. and Pr., sec. 688; *People* v. *Rathbun*, 21 Wend. 509; *People* v. *Mather*, 4 Wend. 229;[2] *People* v. *Doe*, 1 Mann. 451; *Stewart* v. *State*, 13 Ark. 720; *Ex parte Vermilyea*, 6 Cow. 555; *O'Brien* v. *People*, 36 N. Y. 276; *Stout* v. *People*, 4 Park. Cr. R. 132; Thomp. & Mer. on Jur. 238; *Sanchez* v. *People*, 22 N. Y. 147; *People* v. *Bodine*, 1 Denio, 281; *State* v. *Wincroft*, 76 N. C. 38; *Dew* v. *McDevitt*, 31 Ohio St. 139; *U. S.* v. *McHenry*, 6 Blatch. 503; *Union Gold M. Co.* v. *Rocky Mountain N. B.*, 2 Col. 565; *Stewart* v. *State*, 13 Ark. 720; *Milan* v. *State*, 24 Ark, 346; *Costly* v. *State*, 19 Ga. 614; 1 Bish. Cr. Pr., sec. 906, note 6; *Cancemi* v. *People*, 18

---

1 9 Am. Rep. 119.          2 21 Am. Dec. 122.

N. Y. 137; *People* v. *Cotta*, 49 Cal. 166; *People* v. *Vasquez*, 49 Cal. 560.)

II. If the defendant killed Scott by shooting him with a shotgun at the time and place named in the indictment, in perpetrating, or attempting to perpetrate, a robbery upon said Scott, he is guilty of murder in the first degree. (*State* v. *Millain*, 3 Nev. 473; *State* v. *Newton*, 4 Nev. 412; *State* v. *Lopez*, 15 Nev. 413; *People* v. *Long*, 39 Cal. 694.)

III. The fact that the jury was not admonished, and officers were not sworn in, is not such error as to warrant a reversal of the judgment, or the granting of a new trial, as the defendant suffered no injury therefrom. (*State* v. *Harris*, 12 Nev. 414; *State* v. *Jones*, 7 Nev. 409; *Carnaghan* v. *Ward*, 8 Nev. 33; *State* v. *Pritchard*, 15. Nev. 100; *People* v. *Boggs*, 20 Cal. 433; *State* v. *McMahon*, 17 Nev. 373.)

*W. H. Davenport*, Attorney General, and *H. F. Bartine*, also for Respondent, orally argued the case and filed a brief.

By the Court, BELKNAP, C. J.: —

Defendant appeals from a judgment of conviction of murder of the first degree upon numerous exceptions.

1. Defendant applied for a change of venue on the ground of prejudice existing against him in the county where the indictment was pending, which would prevent him from having a fair and impartial trial. The application was based upon affidavits tending to establish the fact alleged, and resisted by counter-affidavits. It is unnecessary to consider the contents of the affidavits. The district court overruled the motion for the time being, until it could be shown by an examination of a sufficient number of jurors that a fair and impartial jury could not be obtained. After examining eighty-one persons a jury was impaneled. The statute authorizing a change of venue in criminal cases provides that, before granting the order, the court shall be satisfied that the representations of the moving party are true. The question whether a fair and impartial jury could be obtained depended largely upon the opinions of witnesses. Opinions differed widely, and the court adopted a very satisfactory test to ascertain the fact. The practice pursued was approved in *State* v. *Millain*, 3 Nev. 433, and by the supreme court of California in *People* v. *Plummer*, 9 Cal. 299,

and in *People* v. *Mahoney*, 18 Cal. 181.   In this connection it is said that defendant was entitled, not only to an impartial jury, but to an impartial trial; and it is contended that the possibility of an impartial trial was precluded by the existence of a prejudice which pervaded the community.   An affidavit against the motion denies the existence of such a feeling of hostility as would prevent an impartial trial of the cause, and no fact has been presented tending to show prejudice in this respect to the defendant upon the occasion of the trial.

2. Defendant moved the court for a continuance of the trial of the cause, upon the ground of the absence of witnesses, and in support thereof relied upon his affidavit setting forth that on the twenty-third day of February, 1885, subpœnas were issued commanding Joshua Winthrop, W. J. Thompson, and John Doe (foreman of Reconzone sheep ranch) to be present as witnesses at the trial, to take place on the seventeenth day of March succeeding, to testify in his behalf; that the sheriff of the county, as appeared by his return, had been unable to find any of these persons.   But it is nowhere suggested that the sheriff was not diligent in endeavoring to serve the process which had been placed in his hands.   The affidavit fails to state whether the officer was informed of the place of residence of any of them—save that they had told affiant that they lived in Humboldt County—or where they could be found, or where any information concerning their whereabouts could be obtained. Nor were any facts shown from which the court could predicate a belief that their attendance could be procured at any subsequent term of the court.   The order of the district court denying the motion for a continuance was correct in respect to the absence of the persons named, because of these defects.

Another witness named Charles Barnard had been subpœnaed, but was not present at the trial.   The district attorney stated in open court that Barnard was at Lewis, in Lander County, and thereupon the court stated, "that if defendant desired, an attachment would issue for Barnard.   Defendant did not at any time apply for such attachment, but declined to proceed until attendance of witnesses was assured."   Under these circumstances, defendant cannot now complain of the absence of this witness.   (*People* v. *Weaver*, 47 Cal. 106.)

3. A challenge in writing was interposed in behalf of defendant to a panel of additional jurors summoned upon an

open *venire* directed to the sheriff, upon the ground of "a material departure from the form prescribed by the statute in respect to the drawing and return of said jury." The challenge specifies the particular grounds upon which it is rested, none of which are now urged except this: "That the deputy sheriff who summoned forty of said jurors is biased against the defendant." The statute authorizes a challenge to the panel founded on a material departure from the forms prescribed by the statute in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn (sec. 1947); and also upon bias of the officer summoning jurors upon an open *venire*. (Sec. 1954.) The challenge was imperfectly taken. The separate causes of challenge should have been separately taken, and the challenge should have shown upon its face whether it was taken for implied or actual bias. If for implied bias, it was the duty of the court to decide upon the objection; if for actual bias, triers should have been appointed by the court for that purpose. (Sec. 1968.) The challenge was overruled, and it is now urged that the question of bias should have been determined by triers and not by the court. The exception was not placed upon that ground in the district court. Regarding the challenge as one for actual bias, it was competent for the court, by consent of the parties, to act as trier. Defendant not only failed to ask for the appointment of triers, but submitted evidence in support of the challenge to the court. This operated as a waiver of an examination by triers. It was decided in *People* v. *Mather*, 4 Wend. 230,[1] that "when the facts on which a challenge rests are disputed, the proper course is to submit the question to triers; but if neither of the parties ask for triers to settle the issue of fact, and submit their evidence to the judge, and take his determination thereon, they cannot afterwards object to his competence to decide that issue. The production of evidence to the judge without asking for triers will be considered as the substitution of him in place of triers; and his decision will be treated in like manner as would the decision of triers." (*Com.* v. *Gross*, 1 Ashm. 218; *People* v. *Rathbun*, 21 Wend. 542; *Stout* v. *People*, 4 Park. Crim. R. 134; *O'Brien* v. *People*, 36 N. Y. 279; *Schoeffler* v. *State*, 3 Wis. 717; Barb. Crim. Law, 355.) The decision of the triers, and in

___
[1]   21 Am. Dec. 122.

this case by the court as trier, is final, and not the subject of exception, and cannot be reviewed upon appeal. (Sec. 2046, Comp. L.; *People* v. *Cotta*, 49 Cal. 166; *People* v. *Vasquez*, Id. 560; *People* v. *Taing*, 53 Cal. 602.) If the challenge be considered as made for implied bias, it was properly overruled, because it does not set forth any ground upon which a challenge for implied bias may be made. (Sec. 1964, Comp. L.) The record fails to show that the challenge was denied. This omission cannot be construed as a confession of the challenge. An appellant must affirmatively show error.

4. Upon the trial of the cause, defendant testified: " That on the night of the homicide, between eight and nine o'clock in the evening, he entered the store building of Scott & Powell (where said homicide was committed) with the intention of committing robbery by intimidation; that he carried a shotgun with both barrels loaded with bird-shot, but uncocked; that he had barley sacks upon his feet, and a barley sack pulled over his head loose, without being fastened, with small holes cut in front through which to look; that he requested deceased to keep still, but when he saw the movements of Scott he abandoned all intention of committing any robbery or other felony, and was endeavoring in good faith to leave the premises without committing any felony whatever; that in so doing the barley sack on one of his feet caught on something at the end of the counter; the mask became displaced so that he could not see; the gun was jerked from defendant, and, in being so pulled away from defendant, was discharged accidentally, and, without any voluntary act of defendant, deceased was thereby killed, and defendant fled; that immediately before the gun was seized by deceased, defendant cried out, ' Hold on, and I will go.' *    *    *  "

The court refused to instruct the jury upon the theory of an abandonment by defendant of his felonious attempt, and its ruling in this respect is assigned as error. The doctrine of abandonment of an attempt is thus stated in Whart. Cr. Law, sec. 187: " If an attempt be voluntarily and freely abandoned before the act is put in process of final execution, there being no outside cause prompting such abandonment, then this is a defense. But it is otherwise when the process of execution is in such a condition that it proceeds in its natural course, without the attempter's agency, until it either succeeds or mis-

carries.  In such a case no abandonment of the attempt, and no withdrawal from its superintendence, can screen the guilty party from the results.  *  *  *  It should be remembered, also, that if such abandonment is caused by fear of detection, it is no defense if the attempt progress sufficiently towards execution to be *per se* indictable before such abandonment. Thus, if a thief, when moving his hand towards a pocket, desists on seeing a detective, the offense is made out.  To the same effect, perhaps, may be cited two American decisions, in which attempts at rape, abandoned before consummation, were held indictable.  It is true that it may be observed that in these cases the offense of felonious assault was complete prior to the period of abandonment.  More exactly illustrative of the principle is an English case, tried before Chief Baron Pollock, in which it appeared that the defendant, having lighted a lucifer match to set fire to a stack, desisted on discovering that he was watched.  It was held, and properly, that this abandonment of purpose was no defense.  It must also be remembered that if an attempt, e. g., an assault, is frustrated by force, such frustration is no defense."

The rule as thus declared fully meets the case made by the defendant, and sustains the action of the district court in refusing the instructions.  (See also *State* v. *Elick*, 7 Jones (N. C.), 68; *Lewis* v. *State*, 35 Ala. 380; *Regina* v. *McCann*, 28 U. C. Q. B. 516; *State* v. *Blair*, 13 Rich. Law, 97.)

5.  The court declined to give a series of instructions presented in behalf of defendant, based upon the position that the killing of the deceased was not murder of the first degree unless committed with a deliberate and premiditated design to kill. The statute (section 2323, Comp. Laws.) provides that " all murder which shall be perpetrated by means of poison, or lying in wait, torture, or any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder of the first degree."  In considering a similar statute of the state of New Hampshire, the supreme judicial court of that state well said: " The legislature did not intend that this species of killing should be murder of the first degree, only when accompanied by a deliberate, premeditated design to kill; for if such a design had been a necessary ingredient to constitute murder of the first degree,

the latter part of section 1 would not have been added. If killing in the perpetration of a robbery was murder in the first degree only when accompanied with such a design, it was already included under the words 'other deliberate and premeditated killing,' and nothing further need have been said about it." (*State* v. *Pike*, 49 N. H. 403.[1])

In the instructions upon this branch of the case, given at the request of the state, the word "kill" is employed, instead of the statutory word "murder"; the statute declaring, not that every homicide committed in the perpetration or attempt to perpetrate arson, rape, robbery, or burglary, shall be murder of the first degree, but that any murder so committed shall be murder of the first degree. The following is one of the class of instructions upon this point: "If you find from the evidence, beyond a reasonable doubt, that the defendant, on the twenty-fourth day of December, 1884, or thereabouts, in Humboldt County, state of Nevada, did then and there kill R. H. Scott, named in the indictment, by shooting him with a shotgun, and likewise find that such killing was done in perpetrating, or attempting to perpetrate, a robbery upon said Scott by the defendant, then your verdict should be guilty of murder of the first degree."

Section 2327, Comp. L., provides that when "involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder." The killing of a human being, although unintentional, is thus made murder when perpetrated by a person engaged in the commission of a felony. The defendant was so engaged, as is shown by his own testimony. The words "kill" or "murder" were, under these circumstances, of like signification and effect, and either could properly have been used.

6. The court instructed the jury as follows: "There are certain kinds of murder which carry with them conclusive evidence of premeditation. These the legislature has enumerated in the statute, and has taken upon itself the responsibility of saying that they shall be deemed murder of the first degree. One of these classes of murder is when it is committed in the perpetration or attempt to perpetrate a robbery. When a jury finds a murder has been committed, it has no option but to find

1　6 Am. Rep. 533.

the perpetrator thereof guilty of murder of the first degree."
The instruction is a copy of a portion of an instruction to be
found in the report of the case of *People* v. *Sanchez*, 24 Cal.
29. The complete instruction, as given in that case, was used
in explaining the degrees of murder, and the tests by which
they could be ascertained. It was highly commended by the
supreme court of California in *People* v. *Nichol*, 34 Cal. 212,
but neither case was one of murder committed in the perpetra-
tion of felony. These decisions are not authority, therefore, in
this case. It is claimed that the concluding sentence of the
instruction takes from the jury the right to fix the degree of
murder. It correctly defines the degree which the law attaches
to murder committed in an attempt to perpetrate a robbery,
and tells the jury in effect that if the facts come within the law
as stated, they have no option but to return a verdict of guilty
of murder of the first degree. It is a statement to the jury of
the legal effect of facts, but does not direct them to find in any
particular way. The right to determine the degree of murder
is, by statute, committed to the jury, but they are not deprived
of the right by being instructed in their duty under the law.
It cannot be said, as matter of law, that because the jury may
fix the degree of murder, they may find any degree they please,
although they have the power to do so. The instruction was
given in connection with others which expressly declared the
right and power of the jury to ascertain by their verdict whether
the offense was murder of the first or second degree, and if a
reasonable doubt existed in the minds of the jurors whether
defendant was guilty of murder of the first degree or second
degree, he should not be found guilty of any greater offense
than murder of the second degree, and the instructions con-
tained a form for a verdict of murder in the second degree.

7. At the conclusion of the evidence, and before the argu-
ment, the court took a necessary recess of ten minutes for the
purpose of allowing the jury to leave the room. During their
absence from the court-room they were, by direction of the
court, in charge of the sheriff and his deputy. Affidavits in
behalf of the state show that there was no communication with
any member of the jury upon the subject of the case, nor any
communication whatever other than innocent, passing remarks
directed at jurors by persons in the hall through which the jury
passed. Upon taking the recess they were not admonished

" not to converse among themselves, or with any one else, on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them," as provided by section 2005, Comp. L.; but it is clearly shown that the defendant was not injured thereby. (*People* v. *Colmere,* 23 Cal. 632.)

8. The court refused to strike out of the verdict a recommendation to mercy. The recommendation constituted no proper part of the verdict; but the ruling could not have prejudiced the defendant. Further exceptions are found in the record, but they have not been argued here, and the rulings upon which they are taken are manifestly correct, and discussion thereon is unnecessary.

We have given a careful consideration to the case, and cannot discover that the record contains any error, or that any injustice has been done the defendant. The judgment and order denying a new trial must be affirmed, and the district court directed to fix a day for carrying its sentence into execution. It is so ordered.