[Crim. No. 968. Third Appellate District.—May 11, 1927.]

# THE PEOPLE, Respondent, v. WILLIAM TOGNOLA, Appellant.

[1] CRIMINAL LAW—ROBBERY—VERDICT—SURPLUSAGE.—In a prosecution for the crime of robbery, a verdict finding the defendant "guilty of robbery in the first degree, as charged in the information" is not void for uncertainty; and the language therein "as charged in the information" is surplusage and may be disregarded.

[2] ID.—VERDICT—INTENT—CONSTRUCTION.—A verdict must be construed in the light of the facts disclosed by the record so as to give effect to the manifest intention of the jury, and if the language of the verdict is unambiguous and it is included within the charge pleaded in the information, it is valid.

[3] ID.—STATUTORY LANGUAGE — DEGREE OF CRIME — PLEADING — EVIDENCE—VERDICT.—An information charging robbery is sufficient if it follows the language of section 211 of the Penal Code, and it is unnecessary that such information charge the specific degree upon which a conviction is sought; and an information so drawn will support a verdict of either degree of the crime which the evidence discloses, which must be specified in the verdict.

---

1. See 8 Cal. Jur. 401; 27 R. C. L. 862.
2. See 8 Cal. Jur. 401.
3. See 22 Cal. Jur. 845; 23 R. C. L. 1151.

[4] ID.—FIRST DEGREE ROBBERY—USE OF DEADLY WEAPON—PLEADING —EVIDENCE—VERDICT.—To support a verdict of robbery in the first degree, it is not necessary that the information should describe or name the deadly weapon with which the accused is armed, or allege that he was armed with any deadly weapon at all; and where the accused is charged with robbery in the language of section 211 of the Penal Code, and the evidence shows that the crime was committed by one while he was armed with a deadly weapon, and the verdict finds him guilty of robbery in the first degree, the verdict is valid.

[5] ID.—MISCONDUCT OF DISTRICT ATTORNEY—ARGUMENT—INSTRUCTIONS.—In a prosecution for robbery, prejudicial error may not be predicated upon the argument of the district attorney, wherein he refers to the accused as "a crook who is a good deal more clever than any I have dealt with for some time," where the trial judge promptly charges the jury to disregard such statement.

[6] ID.—LEGITIMATE ARGUMENT—IDENTIFICATION OF DEFENDANT—REFERENCE TO ANOTHER CASE.—While, for the purposes of illustration, argument may be afforded a considerable latitude, it should be confined to the bounds of logic and reason; and in a prosecution for robbery, wherein one of the officers attacks the identification of the defendant by the complaining witness, it cannot be said that the district attorney is guilty of prejudicial error in referring to a conviction in a former murder trial, in which an officer attacked the identification of the defendant by the complaining witness, and the defendant in that prosecution, after conviction, confessed.

[7] ID.—IMPEACHING QUESTION—CURING OF ERROR.—In such prosecution any error of the trial court in sustaining an objection to defendant's impeaching question, "What did you tell the police officer?" was cured by defendant subsequently proving without objection the entire conversation with the officer.

(1) 16 C. J., p. 1101, n. 47.    (2) 16 C. J., p. 1113, n. 15.    (3) 34 Cyc., p. 1811, n. 95.    (4) 31 C. J., p. 857, n. 71; 34 Cyc., p. 1802, n. 38.    (5) 16 C. J., p. 920, n. 79.    (6) 16 C. J., p. 894, n. 36, p. 898; n. 98.    (7) 17 C. J., p. 335, n. 13.

APPEAL from a judgment of the Superior Court of Yuba County.  Eugene P. McDaniel, Judge.  Affirmed.

5. Improper argument of counsel justifying reversal, note, 9 Am. St. Rep. 559.  See, also, 8 Cal. Jur. 267.

6. Reference by prosecuting attorney in argument to jury to result in other cases, note, 38 L. R. A. (N. S.) 1130.  See, also, 8 Cal. Jur. 264; 2 R. C. L. 424, 436.

The facts are stated in the opinion of the court.

A. M. Bundy for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J., *pro tem.*—The defendant was charged jointly with one Heber Norton with the crime of robbery alleged to have been committed by forcibly taking from the person of one Lala Singh the sum of $10. Norton pleaded guilty. Upon trial evidence most persuasive of defendant's guilt was adduced, upon which the jury rendered the following verdict: "We, the jury . . . find the defendant William Tognola guilty of robbery in the first degree, *as charged in the information.*"

Defendant claims: 1. That the verdict is inconsistent and void for uncertainty; 2. That it is the result of prejudice on the part of the jury, created by the employment of opprobrious language with reference to the defendant, used by the prosecuting attorney in the course of his argument to the jury; and 3. Error on the part of the trial court in sustaining an objection to an impeaching question asked by the defendant on cross-examination.

The evidence satisfactorily shows that about 8 o'clock on the night of November 14, 1926, this defendant and his confederate Norton, armed with a loaded revolver, which belonged to this defendant, went down, by prearrangement, to the locality of First and B Streets in Marysville, which was the Chinese and Hindu quarter of that city, situated at the levee. There they encountered the prosecuting witness, Lala Singh, a Hindu, and, attacking him, one of the assailants held the victim while the other beat him about the head with the butt of the revolver, knocking him down and robbing him of $10. During the melee, the revolver was discharged. The culprits then fled. Their victim soon arose and hastened to the store of Charley Chan, a countryman, where he reported the robbery. From there he proceeded to police headquarters, where he arrived within half an hour of the escapade, with his shirt saturated and his face covered with blood flowing from several ugly wounds about the head. He once more reported the robbery and the officers

immediately went in search of his assailants, whom, by means of a flashlight, they soon located down by the levee. When the defendants were taken into custody Norton had in his possession the sum of $9.50 and also the loaded revolver, upon the butt of which were fresh bloodstains. One of the chambers of the revolver was empty. On the person of Tognola was found the sum of $11.34, and in his side pocket was an empty shell of the caliber which fitted the revolver. Later the officers visited the room formerly occupied by this defendant and found his empty revolver case and a large number of the same sized shells. On being confronted by the prosecuting witness Norton was positively identified as the one who had beaten him with the revolver, and Tognola was finally identified as the one who held him during the robbery. The evidence is somewhat conflicting as to whether the prosecuting witness may not have at first failed to identify this defendant. The Hindu spoke English poorly and finally explained that Tognola, when first presented to him for identification, looked different because he wore a different pair of eye-glasses at the time of the assault. On the trial, however, the Hindu denied that he had ever failed to identify Tognola, and explained that in response to a question propounded to him by the officer, as follows: "Do you recognize this man *as one who hit you on the head?*" he said "No, sir."

Subsequently, without promise or hope of reward, Norton confessed his guilt and told the story of the robbery in detail, implicating Tognola as the chief instigator of the crime.

[1] A verdict reciting that "We, the jury, find the defendant guilty of robbery in the first degree, *as charged in the information,*" is not void for uncertainty. The language "as charged in the information" is surplusage and may be disregarded. (8 Cal. Jur. 401; *People* v. *Brady,* 6 Cal. Unrep. 719 [65 Pac. 823]; *State* v. *Schweitzer,* 18 Idaho, 609 [111 Pac. 130].) Surplusage and informalities employed in the language of a verdict should be disregarded. The language is sufficient, and the verdict is valid if the intention of the jury is clear, to convict the accused of the crime charged, or of any crime necessarily included in the information. (8 Cal. Jur. 401; *People* v. *McCarty,* 48 Cal.

557; *People* v. *Sheik,* 75 Cal. App. 241 [243 Pac. 39]; *People* v. *Mercado,* 59 Cal. App. 69 [209 Pac. 1035].)

[2] A verdict must be construed in the light of the facts disclosed by the record so as to give effect to the manifest intention of the jury, and if the language of the verdict is unambiguous and it is included within the charge pleaded in the information, it is valid. (*People* v. *Hatch,* 163 Cal. 368 [125 Pac. 907].) [3] Since the amendment of section 211a of the Penal Code dividing robbery into the first and second degrees, a verdict of guilty must specify the degree of the crime, but it is unnecessary that the information should charge the specific degree upon which a conviction is sought. The information is sufficient if it follows the language of section 211 of the Penal Code, and will then support a verdict of either degree of the crime which the evidence discloses. [4] To support a verdict of robbery of the first degree, it is not necessary that the information should describe or name the deadly weapon with which the accused is armed, or allege that he was armed with any deadly weapon at all. (*In re Colford,* 68 Cal. App. 308 [229 Pac. 63].) If the accused is charged with robbery in the language of section 211 of the Penal Code and the evidence shows that the crime was committed by one while he is armed with a deadly weapon, and the verdict finds him guilty of robbery of the first degree, the verdict is valid.

[5] The language used by the district attorney in his argument to the jury as follows: "I want to say this in the beginning, we are dealing with a crook who is a good deal more clever than any I have dealt with for some time," is not reversible error, particularly since the trial judge promptly charged the jury to disregard the statement. (*People* v. *Bose,* 28 Cal. App. 743 [153 Pac. 965]; 8 Cal. Jur. 267.)

[6] The following language, also used by the district attorney in his argument to the jury, appears to have been addressed to the evidence of an officer who intimated that the prosecuting witness first failed to identify Tognola and was in the nature of an illustration used for the purpose of argument and was not prejudicial: "There has been . . . some attack made on the Hindu's identification of Tognola. . . . What if this complaining witness had failed . . . to identify Tognola? . . . At a murder case years ago, one officer came into court . . . and testified that my complain-

ing witness, the only person I had . . . who identified the
person charged with the crime, stated that the boy had said
to him he could not identify any of the parties. Yet officers
where do they get these impressions; why they do it I don't
understand. But the fact remains that other officers who
were following the case . . . knew that there was some mis-
understanding, some mistake, because if you remember the
jury went ahead and brought in a verdict of murder of the
first degree, and the party convicted confessed and impli-
cated all three, so you see sometimes an officer gets the
wrong impression.''

While it is true that, for the purposes of illustration argu-
ment may be afforded a considerable latitude, yet it should
be confined to the bounds of logic and reason.

In *Tucker* v. *Henniker*, 41 N. H. 317, it is said, with re-
spect to the scope of legitimate argument: "His illustrations
may be as varied as the resources of his genius; his argument
as full and profound as his learning can make it; and he
may if he will, give play to his wit, or wings to his imagi-
nation.'' (*People* v. *Molina*, 126 Cal. 505 [59 Pac. 34].)

In the instant case the district attorney's boasting of
securing a conviction of murder in another case ''years
ago,'' in spite of an officer's statement that the prosecuting
witness failed to identify the accused, had no logical ap-
plication to the case which he was arguing; but the language
with which it was associated was intended to imply, because
an officer was mistaken in his evidence of lack of identity
in another case, that, therefore, the officer who testified in
this case to a similar failure to identify this defendant,
might also be mistaken. The argument, if it may be digni-
fied by that term, may have contained the veiled suggestion
that the testimony of the officer was not the result of mis-
take, but was prompted by some ulterior motive. At least
it cannot be said to be without some possibly legitimate
application, and the reference to the conviction in the former
murder trial was not prejudicial.

[7] The objection sustained to defendant's impeaching
question: ''What did you tell the police officer?'' was cured
by defendant subsequently proving without objection that
entire conversation with the officer.

For the foregoing reasons the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.