THE STATE OF NEVADA, RESPONDENT, *v.* RALPH HOWARD ALSUP, APPELLANT.

No. 3683

April 4, 1952.                                    243 P.2d 256.

*John W. Bonner* and *Harry E. Claiborne,* both of Las Vegas, for Appellant.

*W. T. Mathews,* Attorney General, and *Roger D. Foley,* District Attorney of Clark County, for Respondent.

## OPINION

By the Court, EATHER, J.:

The appellant, Ralph Howard Alsup, defendant below, was charged by information in the district court of Clark County, Nevada, with the crime of assault with intent to kill, which was alleged to have been committed on or about December 2, 1949. The defendant was tried by a jury, convicted of the crime of assault with a deadly weapon with an intent to inflict bodily injury; his punishment was fixed at not less than one year nor more than two years in the penitentiary and in addition thereto the defendant was ordered to pay a fine in the sum of $1,500 and judgment and sentence entered accordingly.

From the order denying appellant's motion for a change of venue, the order denying appellant's motion for a new trial, the denial of a motion in arrest of judgment, and from the judgment, the defendant has appealed.

The charge resulted from a fight between the defendant and one Ray Folsom during the course of which

Folsom was shot. The fight occurred in a poorly lit hallway and while many other persons were present observing the fight, the lack of illumination resulted in conflicting statements as to the details of the actual shooting. There was, however, direct testimony that the shot was fired by defendant. He claimed that the shot was fired in self-defense.

Counsel for appellant have made numerous assignments of error. We will consider the assignments presented in the briefs and orally argued in regular order.

(A) The first assignment of error is that the court erred in denying appellant's motion for a change of venue. This motion was made under section 10913, N.C.L.1929, which reads as follows:

"A criminal action prosecuted by indictment or information may be removed from the court in which it is pending, on application of the defendant or state, on the ground that a fair and impartial trial cannot be had in the county where the indictment or information is pending."

This court in the case of State v. Casey, 34 Nev. 154, 163, 117 P. 5, 8, said:

"There are few cases that present themselves to appellate courts where it is more difficult to determine upon any settled principles or rule of action than in these cases relating to a change of venue. By all it is admitted that there is a broad discretionary power allowed the court of original jurisdiction. But whilst that court has such discretion, it is still a judicial and not an arbitrary discretion. If that discretion is used in an arbitrary and oppressive manner an appellate court is bound to correct the error, but to distinguish between what is and what is not an abuse of that discretion is often a very nice and difficult question. There are two circumstances, the existence of either of which should entitle the defendant to a change of venue. The one is the impossibility of obtaining an impartial jury. The other is such a state of public excitement against the defendant that even an

impartial jury would be likely to be intimidated and overawed by public demonstrations against the accused."

See also State v. McLane, 15 Nev. 345, 372; State v. Gray, 19 Nev. 212, 215, 8 P. 456; People v. Plummer, 9 Cal. 298, 299, and People v. Mahoney, 18 Cal. 180, 181.

At this point we deem it necessary to state the pertinent facts relative to the motion for a change of venue.

This case was originally set for trial on the 24th day of September, 1950. On the 21st day of September, 1950, appellant moved for a change of venue. A hearing on the motion was held on September 22, 1950, at which time the court, having heard and considered the evidence offered by both appellant and respondent in relation thereto, denied the motion but granted the appellant the privilege of renewing the same after jurors were examined. Immediately thereafter appellant perfected an appeal to this court, and the trial court, over the state's objection, granted appellant's motion for a continuance until after the determination of the appeal from the trial court's order denying the motion for a change of venue.

On January 23, 1951, this court affirmed the trial court's order denying the motion for an order for a change of venue. (State v. Alsup, 68 Nev. 45, 226 P.2d 801.) The case was again set for trial on March 12, 1951. On February 16, 1951, it was ordered that the judge of the said court and the deputy county clerk of Clark County, Nevada, draw from the jury box containing names of jurors of Clark County, Nevada, the names of 200 persons, the persons so drawn to be summoned to appear before the court on Monday, March 12, 1951, at the hour of 10 a. m. then and there to act as jurors before said court.

On the 12th day of March, 1951, the above case came on for trial before a jury. After 25 veniremen were examined a jury was selected, and after three more veniremen were examined, an alternate juror was selected. At the conclusion of the selection of the jury

counsel for defendant renewed his motion for a change of venue, "based upon the record which we made in the prior hearing, and the affidavits and newspaper clippings, which I wish to have made a part of the record in this motion, and we now renew the motion and ask that this court grant us a change of venue upon the grounds that it is not possible to obtain a fair and impartial jury in Clark County, Nevada, and that if we had obtained a jury, that they would probably be overawed and intimidated by public clamor, public prejudice and statements from other jurors."

The motion was denied, the court pointing out that of the 12 jurors who served, not one had been challenged for cause. This fact, together with the other circumstances attending the early selection of the jury undoubtedly support a determination that it was not impossible to obtain an impartial jury. They do not, however, dispose of the contention that a state of public excitement against the defendant existed in the community to a point that would overawe and intimidate even an impartial jury. In this respect the motion was supported by the affidavits of approximately 145 parties from Las Vegas and immediate vicinity who expressed the opinion that the defendant could not secure a fair and impartial trial in Clark County on account of unfavorable publicity which he had received as a result of the alleged assault. These affidavits were subscribed and sworn to on September 19, 1950.

Also attached were photostat copies of sundry newspaper clippings, including news articles and certain advertisements of "Nevada Citizens Committee" which are said to have so inflamed public opinion against the defendant as necessarily to have influenced the jury. The publications referred to must be grouped into periods of their respective publications in order to determine the weight they give to this contention. The shooting took place December 2, 1949. The first publication complained of appeared December 4, 1949, and appears to be along the line of usual journalistic reporting of

what occurred. It ended with a statement that Texas authorities had reported a prior criminal record of Alsup in that state. On December 12, 1949 a large advertisement was published by Nevada Citizens Committee which called on citizens to make the state "too hot for comfort for racketeers, whether they be union, gambler, or any other kind of a racketeer." It referred to the "recent outrageous incident in Southern Nevada in which a high union official is accused of shooting another union man in connection with a labor meeting." It condemned the act of going armed, referred to "this hoodlum element" and demanded laws that would "screen out the ex-criminals, the felons, the racketeers, and the goons from leadership in any union group in Nevada." The next group of publications occurs in April, 1950, purporting in more or less general terms to criticize alleged unfair union labor practices. It will be noted that all of this is still approximately one year prior to defendant's trial in March, 1951. The last publication attached to the affidavits is a full page advertisement of Nevada Citizens Committee, September 3, 1950, addressed to Nevada voters and seeking defeat of sundry candidates supported by the defendant in the coming elections of that month. This full page advertisement also included brief reproductions of the earlier news items concerning the shooting and Alsup's arrest, etc. Its purpose appears to have been in the main political. The names of four candidates for office were printed in large type as sponsored by appellant and their rejection at the polls is called for. This was some six months before appellant's trial, and no newspaper publicity of any kind during this six months' period is included in the exhibits. It would appear to have been entirely within the exercise of the discretion and judgment of the trial court to conclude that the publicity of September, 1950, devoted to the main purpose of the September, 1950 elections, the publications of April, 1950 and the publications of December, 1949, did not create such a state of feeling in Clark County in March,

1951, as to subject the jury to its influence, even conceding their inflammatory nature.

The district attorney of Clark County filed an answer to the motion for change of venue and attached affidavits from approximately 56 people from Las Vegas and immediate vicinity who expressed the opinion that they believed the defendant could have a fair and impartial trial in Clark County. These affidavits were subscribed and sworn to on September 21, 1950.

The affidavits filed by appellant upon which the motion for a change of venue was based were exceedingly unsatisfactory; they in the main set forth merely that in the opinion of the affiant, the appellant could not have a fair trial, owing to the prejudice against him. In all of the affidavits the affiant states in substance: I have heard the case of Ralph Alsup discussed; during said time I have heard numerous persons discuss said case. The discussion involved the following facts: They have referred to him as a labor gangster and that he should be put in jail. We have to get rid of labor gangsters. He should be run out of town. A bad influence and detriment to the community. People have said that they would like to be on the jury to send him up for life. That he should be ridden out of town on a rail, etc. From such discussions it is my opinion (so read the affidavits) that the effect of such discussions and the present feeling among the majority of Clark County residents insofar as the trial of Alsup now set for September 25, 1950, is as follows: I don't *believe* that Mr. Alsup could get a fair trial in Clark County: Mr. Alsup could not receive a fair trial in Clark County in my *opinion,* etc.

The affidavits were signed and sworn to on the 19th day of September, 1950, whereas the trial of the case was not heard until the 12th day of March, 1951.

In all of the affidavits the mere *opinion* of the affiants that an impartial trial could not be had was set forth.

While the affidavits may well reflect upon the ability of the affiants or those with whom they had discussed the case individually to serve as impartial jurors, they do not necessarily support the contention that such prejudice existed in the popular mind on the date of the trial as would interfere with the impartial administration of the law. The affidavits do not establish the fact that all of the people of Clark County were so prejudiced against him as to become disqualified to sit as jurors in the case. The court, in the exercise of a proper discretion could well have regarded these affidavits standing alone of insufficient probative force to authorize a change of venue. The conclusion is to be drawn by the court and not by the defendant and his witnesses, and the court must be satisfied from the facts and circumstances positively sworn to in the affidavits, and not from the general conclusions to which the defendant may swear, or to which his witnesses may depose, that in their *opinion* the defendant could not receive a fair trial.

In the case of State v. Fouquette, 67 Nev. 505, 221 P.2d, 404, 411, this court said:

"The existence of either of two circumstances should entitle a defendant to a change of venue: (1) The impossibility of obtaining an impartial jury; or (2) Such a state of public excitement against the defendant, that even an impartial jury would be likely to be intimidated and over-awed by public demonstrations against the accused. State v. Millian, 3 Nev. 409, 432; State v. Casey, 34 Nev. 154, 164, 117 P. 5.

"After considering affidavits and newspaper articles offered in support of the application and oral testimony offered in opposition thereto, the court properly held that the evidence was not sufficient to justify a change of venue because of the existence of any great public excitement against the defendant, and that the impossibility of obtaining a fair and impartial jury could best be determined when the jurors were examined.

The application was thereupon denied, 'without prejudice on the part of the defendant to renew his motion at a later time.'

"The method adopted by the court to determine whether or not a fair and impartial jury could be obtained has been approved by this court. State v. Gray, 19 Nev. 212, 215, 8 P. 456; State v. Teeter, 65 Nev. 584, 200 P.2d 657, 671, 690."

In the case of People v. Cullen, 37 Cal.2d 614, 234 P.2d 1, 8, (Supreme Court of California) the court stated:

"There was no abuse of discretion in denying the motion for a change of place of trial or in disallowing the challenge to the jury panel. The motion was submitted on conflicting affidavits from which the court could justifiably conclude that at the time of the ruling and the trial the clamor and prejudice, if any existed, had subsided and that there was no reason why the defendant could not be tried impartially and fairly by the jury selected. It is also to be assumed that the court had some knowledge of conditions existing in the county."

In People v. Yeager, 194 Cal. 452, 481, 482, 229 P. 40, it was stated that a court may not be required to grant a motion for a change of venue because there was some excitement in the county regarding the matter, or that the press had expressed hostility; and that a denial of a change of venue might well be predicated on the fact that the excitement had subsided before the application was made.

In the case of Jones v. State, 236 P.2d 102, 108, (criminal court of appeals of Oklahoma) the court stated as follows:

"The granting or refusing of a change of venue is a matter resting within the sound discretion of the trial court to be disposed of in furtherance of substantial justice; and action of trial court will not be disturbed on appeal, unless there is an abuse of discretion. * * *"

In Abby v. State, 72 Okla.Cr. 208, 114 P.2d 499, 500, 115 P.2d 266, it is held:

"In this day of paved highways, the wide use of rural telephones, daily papers, and radios, the mere fact that the inhabitants of a county have read and heard of the commission of a crime does not disqualify them. To warrant a change of venue, it must be made to appear that they have a fixed opinion as to the guilt or innocence of an accused to the extent that he cannot have a fair trial by an impartial jury. * * *"

In the face of the record we find no warrant for holding that the court erred in denying the motion for a change of venue. The court probably arrived at the conclusion that the manifestations of excitement and resentment in Las Vegas and the immediate vicinity, represented the usual result upon the public mind in cases of this character and that whatever feeling the public had at that particular time had subsided before the trial was begun.

The next assignments of error have reference to remarks made by the district attorney and the deputy district attorney during the trial of the case, and also to the remarks made by them in their argument of the case to the jury.

The objectionable portions of the remarks pointed out in the brief are as follows: That prejudicial error was committed when the district attorney, immediately following the testimony of a witness in the case, as he was leaving the stand said, "Who are the police working for in this case, the defense or the prosecution?" After a discussion was had by the court and counsel regarding the above remark the district attorney stated as follows: "May I ask that the remarks in the record be stricken and the jury admonished not to consider them?" The court: "I doubt if the jury heard them; but you can have an instruction to that effect at the proper time."

At the time the above remark was made the district attorney was speaking to his associate, the deputy district attorney, and not to the witness. No objection

was made by the appellant to the remarks. The appellant did not ask the court to admonish the jury. The only request that the jury be instructed to disregard the remarks came from the respondent, which the court refused because it believed the jury did not hear the remarks. A full reading of the testimony and the subsequent actions and words of the court and counsel for both appellant and respondent indicate that the remarks were not heard by the jury.

In the case of Hewitt v. State, 27 Ga.App. 676, 109 S. E. 679, the court stated at page 680 as follows:

"Even if the error alleged in either of these grounds would be sufficient to require the grant of a new trial in the event the conversation was heard by the jury, before it could avail the movant it must affirmatively appear with reasonable certainty that the conversation was loud enough to be heard by members of the jury, and in this case it does not so appear from any legal evidence adduced."

The next objectionable remark pointed out in the briefs was that the deputy district attorney referred to the appellant as a "little giant." At the time the remark was made by the deputy district attorney, counsel for the appellant objected to the statement and asked that the jury be admonished to disregard it, stating: "There's nothing in the evidence that the defendant is a little giant, and it is an improper inference to be drawn from the evidence." The court stated as follows: "The jury will take into consideration the evidence and the fact that those words did not come out in evidence, and will disregard it."

In the case of People v. Tognola, 256 P. 455, 456, 83 Cal.App. 34, the court stated:

"The language used by the district attorney in his argument to the jury as follows: 'I want to say this in the beginning, we are dealing with a crook who is a good deal more clever than any I have dealt with for some time'—is not reversible error, particularly since

the trial judge promptly charged the jury to disregard the statement." Citing People v. Bose, 28 Cal.App. 743, 153 P. 965, 8 Cal.Jur. 267.

Appellant's next assignment of error is as follows: That the court erred in refusing to admonish the jury to disregard statements of counsel for the state in the closing arguments wherein said counsel for the state referred to the three men who were acting as attorneys for the defendant on December 2, 1949, at a time when said attorneys were in conference regarding the defense of the appellant, as an "unholy alliance" and stated, without any evidence having been introduced in the record to substantiate the remarks, that said injuries testified to by Dr. J. C. Cherry, who treated said appellant on December 2, 1949, were probably or could have been inflicted by said attorneys in order to establish in favor of appellant a plea of self-defense; and said district attorney further remarked that the reason said attorneys inflicted said injuries was because they thought there was a dead man at the union hall, namely, one Ray Folsom, as to all of which the court refused to admonish the district attorney and allowed him to continue making such prejudicial remarks over the objection of defendant.

In referring to the statement made by the district attorney we quote a portion of the statement:

"Now, the defense contends that some third party hit Mr. Alsup over the head. I have a theory and it is my privilege at this time to express my theory of this case. It may not be your theory, but I want to give it to you for what it is worth. I think it holds water. * * *"

It is clear that the district attorney was expressing a theory as to how the appellant may have received injuries to his head. The trial court properly ruled that it was for the jury to decide whether or not the theory or theories advanced by the district attorney were reasonable inferences from the evidence. The district attorney advanced two theories as to how the defendant

may have received his head injuries, both of which theories the trial court held to be proper inferences. In this respect the court stated:

"Counsel can draw his own inference. The jury knows that it is counsel's inferences, they are so instructed. It is his theory of the case, and I think he has a right to present his theory of the case."

We have carefully considered these assignments, and do not find anything that would warrant a reversal of this case by reason of these remarks or by reason of this argument. We deem it unnecessary to quote from the cases, but cite the following: State v. Mircovich, 35 Nev. 485, 491, 130 P. 765; Camp v. State, Okl.Cr.App., 239 P.2d 1036, 1039; Williams v. State, 89 Okl.Cr. 146, 205 P.2d 1164, 1171; Workman v. State, 83 Okl.Cr. 245, 175 P.2d 381, 385; Orrel v. State, 79 Okl.Cr. 300, 154 P.2d 779, 788; Brown v. State, 82 Okl.Cr. 344, 169 P.2d 772, 776; Kennamer v. State, 59 Okl.Cr. 646, 57 P.2d 646, 664; Wallace v. State, 57 Okl.Cr. 50, 45 P.2d 164, 166.

In the case of State v. Petty, 32 Nev. 384, 394, 108 P. 934, 937, this court stated:

"Courts have frequently been called upon to reverse cases because of the remark of the attorneys for the prosecution, who through a misguided zeal appear to have forgotten that they owe a duty to the defendant as well as the state. This case, however, does not present a situation of this kind, and we think it clearly falls within that class of cases where the error, if any, is cured by the action of the court." Citing cases.

Without citing authority to sustain his contention, and not touching upon the points in his oral argument, counsel for appellant contends that the lower court erred in giving to the jury instructions Nos. 3, 4 and 5a, and in refusing to give appellant's proposed instructions A, B and C.

Instructions 3, 4 and 5a have to do with the crime of assault with intent to kill. In view of the fact that

appellant was found guilty by the trial jury of a lesser included offense, that of assault with a deadly weapon, we cannot see wherein appellant could be prejudiced by such instructions.

In the case of State v. Jackman, 31 Nev. 511, 522, 104 P. 13, 17, the court stated:

"Had the defendant in this case been convicted of murder in the first degree, we would have gone into a more extended consideration of the point made, and its possible effect upon the minds of the jury. In the Maughs case the defendant was convicted of murder in the first degree; and defendant in this case, of murder in the second degree. For the crime for which the defendant was convicted, the instruction, in any event, could not have been prejudicial."

We disagree with appellant that the trial court erred in refusing to give defendant's proposed instructions A, B and C. The subject matter of the instructions is in part covered by instruction No. 12, the statutory definition of "reasonable doubt." It was pointed out by the trial court that this instruction is not the law in this type of case, since it contemplates only two theories of shooting, one an accidental and the other intentional, and omits to take into account the possibility of a negligent shooting. The court did not err in refusing to give instruction A.

Defendant's proposed instruction B was properly refused because the evidence in the case was not entirely circumstantial. Defendant's proposed instruction C was properly rejected for the same reason, and in addition instruction 13b clearly defined for the jury the two classes of evidence, direct and circumstantial, so that the jury was fully informed and could not in any way have been misled by the failure of the court to give defendant's proposed instruction C. This court finds no error in the trial court's refusal to instruct the jury as proposed by defendant's instructions A, B and C.

"Instructions to be applicable must have some basis in evidence." State v. Moore, 48 Nev. 405, 233 P. 523.

The appellant was charged with the crime of assault with intent to kill. Finally appellant contends in general that the verdict is contrary to the law and the evidence. It is unnecessary to make a further detailed statement of the evidence. From what has been said, it will be noted that there was a direct conflict in the testimony. The case was tried before a jury, and they had the opportunity to see and hear the witnesses. The evidence was conflicting, and as stated in the case of Pooler v. State, 70 Okl.Cr. 199, 104 P.2d 733, 734, 105 P.2d 553, citing Sanders v. State, 46 Okl.Cr. 293, 287 P. 846:

"Where the evidence is conflicting, the weight of the evidence and the credibility of the witnesses is for the jury. This court will not substitute its judgment for that of the jury and the trial judge when there is evidence tending to support the conclusions arrived at by the jury." Citing cases.

The order of the trial court denying the motion for a new trial and the judgment of the said court in the case are affirmed.

BADT, C. J., and MERRILL, J., concur.

ORDER DENYING PETITION FOR REHEARING
April 16, 1952.

*Per curiam:*

**Rehearing denied.**