PEOPLE v. BRADY et al.*

Cr. No. 746; July 6, 1901.

65 Pac. 823.

**Burglary—Verdict.—Under Penal Code, Section 1151, providing that a general verdict on a plea of not guilty is either "guilty" or "not guilty," which imports a conviction or acquittal of the offense charged in the indictment, the designation of the offense in a general verdict is mere surplusage, and a verdict finding defendant guilty of "burgulary" is valid.[1]

**Burglary.—Defendant Leased a House in Which There was no furniture. A vacant house on another farm about nine miles distant contained household furniture, which was found in defendant's possession at the time of his arrest. One witness testified that the

---

*Rehearing denied August 6, 1901.

[1] Cited and followed in State v. Schweitzer, 18 Idaho, 613, 111 Pac. 131, where the jury had brought in a verdict of "guilty of selling by short weight as charged in the complaint."

defendant had borrowed a team about the time the furniture was supposed to have been taken, and another witness testified as to seeing such a team going in the direction of the vacant house, and later return toward the defendant's place. Defendant made many contradictory statements as to where he obtained the furniture. Held, sufficient to warrant a conviction for burglary.

**Burglary—Participant in Crime.—**The fact that a person was living with one guilty of burglary at the time the burglary was committed, and that he made untruthful statements as to where the guilty party obtained the property, is not sufficient evidence to warrant the conviction of such person as participating in the crime.

**Burglary—Cross-examination.—Where, on a Prosecution for Burglary,** the defendant's wife had testified as to the purchase by her husband of the alleged stolen articles, it was proper cross-examination to ask her as to statements, inconsistent with her testimony, at the time of her husband's arrest.

**Burglary—Possession of Stolen Property.—**On a prosecution for burglary, it was not error to instruct that the possession of stolen property soon after the commission of the alleged offense by the person charged was a circumstance tending to prove their guilt, and that the jury should consider the proximity of the place where the property was found to the place of the alleged burglary, the lapse of time since the property was taken, the character and nature of the property taken, and whether the parties denied or admitted the possession, in determining how far the possession of the property by the accused tended to show his guilt.

**Burglary—Verdict.—**On a Prosecution for Burglary it was not error to leave it to the jury to formulate their own verdict on blank forms furnished, stating the degree of guilt of the defendants, if either of them were guilty, and that, if the jury needed further instruction as to framing a verdict, it should return to the courtroom for such instruction.

APPEAL from Superior Court, San Joaquin County; Edward I. Jones, Judge.

Walter Brady and George Helms were convicted of burglary and they appeal. Affirmed as to Brady and reversed as to Helms.

A. V. Scanlan for appellants; T. L. Ford, attorney general, and C. N. Post, assistant attorney general, for the people.

CHIPMAN, C.—Defendants were jointly accused of the crime of burglary, were tried together and convicted, the

jury returning the following verdict: "We, the jury in the above-entitled cause, find Walter Brady and George Helms, defendants, guilty in the first degree for burgulary." Defendants moved for their discharge, and also for a new trial, and both motions were denied, and they appeal from the judgment and from the order denying their motion for a new trial.

1. The motion for discharge was on the ground that the verdict was no verdict, because there is no such offense known to the law as "burgulary"; citing People v. St. Clair, 56 Cal. 406, where the indictment charged an entry into a stable with intent to commit "larcey." It was held that there was no such felony as "larcey" known to the law, and that the maxim idem sonans did not apply. In that case the fatal defect was in the indictment itself, and not in the verdict of the jury. The error here was in the orthography of the word "burglary" as used in the verdict, and was merely a clerical error, which seems to have been overlooked by the court and counsel until the motion for a new trial was made. Where the intention of the jury is unmistakable, mere clerical errors should be disregarded: Jeansch v. Lewis, 1 S. D. 609, 48 N. W. 128. The verdict, being general, and fixing the degree of the crime, would have been complete had the word "burgulary" been omitted altogether. Penal Code, section 1151, which provides: "A general verdict upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the indictment." The obnoxious word may be rejected as surplusage, if necessary to sustain the judgment. But, aside from the foregoing considerations, we think the word used by the jury cannot be read as any other word than "burglary."

2. It is urged that the evidence is not sufficient to sustain the verdict, for the reason that there was no evidence in any way tending to establish the charge except the possession of the property claimed to have been stolen. We have carefully examined the testimony, and are satisfied that there is sufficient evidence to support the verdict as to defendant Brady, but not as to defendant Helms. It appeared that on July 5, 1900, defendant Brady leased from one Keagle a place in the country, known as the "Pope

Place,'' situated between Stockton and Lodi, about three miles south of the latter town, and moved into the house on the place with his family, including defendant Helms, and they remained there until July 22, 1900, when defendants were arrested, and that there was no furniture in the house when Brady took possession. This place is about nine miles from the Cy Moreing place, owned by one Solari. On July 7th a vacant house on this place contained the various household articles afterward found in the house rented by Brady, and the property was fully identified by Solari. He went to his place July 21st, and discovered that the articles were gone, and he testified ''that he saw them on the Pope place on July 23, 1900.'' One Spelti testified that defendants on July 11, 1900, borrowed from the Lewis ranch, where witness was working, a sorrel horse and bay mare with a sorrel colt; that they were returned to the Lewis ranch, July 23d, by Constable Coleman, of Lodi; that defendants came to witness' place in a wagon, and that Brady's wife and some children were in the wagon. Witness Mrs. America Gum testified that on the 8th of July defendant Brady, with his wife and grandson, came to her house in a light two-horse wagon, and borrowed and took away with him a heavy two-horse wagon. This wagon was afterward found near the Pope place. Witness Dolan testified that on July 13th, ''a little after sundown,'' he saw two wagons passing in the direction of the Cy Moreing place, about two miles south of where the witness was; he was near the wagons, one of which was a large two-horse wagon, drawn by a bay and sorrel; the other was a ''small, heavy-sized spring wagon, with a bed about twelve feet long, . . . . drawn by a bay and a brown''; the teams were traveling close together, and ''a little sorrel colt traveling with one of the teams, and, going down, he was right near the sorrel horse''; that ''the same night, about an hour and a half later, he saw the same teams, wagons, and persons pass him, at the same place, going north; that he was about twenty feet from them, and had a lantern with him; that after they passed he put away his lantern, got on a horse, and followed them about two miles, . . . . to what is called the 'Goodwin Place,' where he stayed about an hour, listening to the wagons, which continued north for about two miles, and then turned west in the direction of

the Pope place.'' He did not recognize the persons, and did not testify who they were. He testified that he afterward saw one of the same wagons ''at the Tyndal place, two hundred yards south of the Pope place.'' This was the same wagon that was borrowed from Mrs. Gum. Another witness ''saw defendant Brady and another man, whom he did not know, in Lodi on July 20th, with Mrs. Gum's wagon.'' Other witnesses testified to seeing on the Pope place the wagons and horses and colt similar in description to those testified to by the witness Dolan. There was much evidence tending to show that defendant Brady made contradictory statements as to where he got the property, claiming that he bought the stove in San Francisco, and that he bought some of the property at a second-hand store in Stockton. When asked to go with the arresting officer to the place referred to in Stockton, he went with him, but was unable to find it, and he made contradictory statements as to where the place was. He also claimed that he bought the articles from an expressman in Stockton named Frank A. Jones, but several witnesses who knew all the junk dealers and expressmen in Stockton, as well as the arresting officers, were unable to locate or find any such person in Stockton. Without further statement of the evidence, we think the jury had sufficient facts before them to warrant a verdict of guilty as to defendant Brady.

There is no evidence connecting Helms with the taking or with the possession of the goods, except that he was living in the house with Brady. There was evidence that Helms told a witness that Brady got the articles where Brady had told the witness he got them; that Helms was with Brady when the latter got a team from the Lewis ranch, but not when he got the wagon from Mrs. Gum, which was hired to Brady. So far as appears, defendant Brady had a team and wagon of his own, and it appears that on July 9, 1890, some articles of furniture were delivered to Brady at the Union Transportation Company's wharf at Stockton. Helms was seen with Brady about July 22d, and he testified that he was living with him on July 9th. But there is no evidence that he had possession of the stolen property or made any claim to it whatever or had anything to do with it. If he made statements contrary to the truth as to where Brady got it, that fact would

not tend to show that Helms aided in stealing it. He was not asked to explain his possession of the property, and made no explanation, for the obvious reason that he was not in possession of it.

3. Mrs. Brady was a witness for defendants, and on cross-examination the district attorney asked her the following question: "Q. Mrs. Brady, do you remember being in the sheriff's office on the 24th of July, 1900?" Defendants objected as not cross-examination. The question was completed by stating the persons present, after which the witness was interrogated at considerable length as to what was said by her at that time relative to certain of the stolen articles and where her husband got them. She had testified in chief that her husband purchased the property in question in Stockton on July 9th from one Jones, and paid $18 for it, taking Jones' receipt for the money. It was competent on cross-examination to impeach the witness by showing that she had made statements inconsistent with her testimony, relative to the matter about which she had testified in chief, and the cross-examination was to lay the proper foundation. We see no error in the ruling.

4. The following instructions are objected to: "The court instructs the jury that the possession of stolen property recently after the commission of the alleged offense by the persons charged, if you find any such property to have been in their possession, if unexplained, is a circumstance tending to prove their guilt; and if the jury believe from the evidence that the defendants were found with the stolen property in their possession, if you find any was feloniously taken, then, to determine the weight to be attached to that circumstance as tending to prove guilt, the jury should consider all the circumstances attending such possession, proximity of the place where found to the place of the alleged burglary, the lapse of time since the property was taken, the character and nature of the property taken, whether the property was concealed, whether the parties denied or admitted the possession, and the demeanor and character of the accused. All of these circumstances, so far as they have been proved, are proper to be taken into account by the jury in determining how far the possession of the property by the accused, if it has been proved, tends to show his or their guilt." The court also gave the follow-

ing: "Although you cannot, under the information, find the defendants, or either of them, guilty of any offense other than burglary, it would be somewhat difficult to furnish you with the complete form of every possible verdict at which, according to your view of the evidence, you may arrive. The court will therefore furnish you mere blank forms. Upon one of such forms you will formulate your verdict, and your foreman will sign it. You will be careful to dispose of the whole case, observing that there are two defendants, and if you find either or both of them guilty of burglary you will specify whether in the first or second degree. With proper care, you will probably be able to frame a verdict, but, should you need further instruction, you may request the officer in charge of you to return you to the courtroom for such instruction." We discover no error in either of these instructions. The judgment and order as to defendant Brady should be affirmed and as to defendant Helms they should be reversed.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order as to defendant Brady are affirmed and as to defendant Helms they are reversed.