## T. J. ESTES v. STATE.

No. A-2583.    Opinion Filed July 14, 1917.

(166 Pac. 77.)

1.  **INTOXICATING LIQUORS—Prohibitory Law—Nature of "Intoxicating Liquor."** "Intoxicating liquor," as this phrase is used in the prohibitory liquor statutes of this state, is an alcoholic liquor, and in order to come under the ban of the law such liquor must either contain more than one-half of 1 per cent. of alcohol, or a sufficient quantity of it in a liquor or compound, capable of being used as a beverage, to intoxicate a human being.

2.  **SAME—Unlawful Sale—Evidence.** In the trial of a person on an information which charges the sale of intoxicating liquor, the proof should establish the fact that such liquor is intoxicating, in addition to other necessary facts; otherwise a judgment of conviction cannot stand.

*Appeal from County Court, Bryan County;*
*J. L. Rappolee, Judge.*

T. J. Estes was convicted of violating the prohibitory law, and appeals.   Reversed.

*Utterback & MacDonald,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, T. J. Estes, was convicted in the county court of Bryan county on a charge of selling intoxicating liquor, and appeals to this court for a reversal of the judgment.

The information first filed charged the plaintiff in error with the sale of a certain liquor or compound known as Vina Vita to one Dave Le Flore, and that the liquor or compound was capable of being used as a beverage, and contained more than one-half of 1 per cent. of alcohol, measured by volume.

An amended information was filed which charged the sale of five quarts of intoxicating liquor or compound commonly known as Vina Vita to Dave Le Flore.

It will be noted that in the former information the charge was based upon the liquor being capable of use as a beverage, and upon it containing more than one-half of 1 per cent. of alcohol. In the latter the information simply charges the sale of intoxicating liquor.

The testimony offered by the state was from one witness, Dave Le Flore, the party to whom the sale was made. He testified that he lived three miles southeast of Bennington, in Bryan county; that he had known T. J. Estes for eight or nine years; that in December, 1913, he bought some patent medicine from him known as Vina Vita; that three bottles were purchased by him and two bottles by another party for him; that he drank two and a half bottles of the five; that they were all labeled alike; that he did not drink anything else that day, and that these two and a half bottles made him dizzy; made him crazy; that he had been drunk a good many times; that he did not know how long he stayed in town after drinking the contents of the bottles; that the town marshal told him he had better go home; that he was 25 years old, and did not know how many times he had been drunk; that he had been drunk sometimes every two or three weeks, and sometimes not so often, and sometimes a little more often; that he had not been drinking any whisky upon the date in question nor upon the night before. Bill Madell and Bill Purcell drank some of the liquor contained in the bottles. Witness denied having any whisky, but admitted that he telephoned Madell he had whisky, but says that he called the concoction purchased from

defendant whisky; that he was not drinking nor drunk. when he bought these bottles; that this Vina Vita made· him sick, and that he vomited after he got home.; that. he could not describe the feeling and sickness.

At the close of this testimony a demurrer to the evi-- dence was interposed, and the defendant requested the· court to advise the jury to return a verdict of not guilty.. The demurrer was overruled, and the request denied,. whereupon the defendant introduced Bill Madell, who tes-- tified that he knew Dave Le Flore and was with him sev-- eral times during the day he purchased the Vina Vita - from the Estes drug store; that Bill Purcell was also· with him; that Dave Le Flore was drunk that morning;: came in drunk from his home; that he telephoned witness, the night before that he would bring some whisky, but did not bring it; that the next morning after the sale is al-- leged to have been made he saw the prosecuting witness,. and he had about a half a quart of whisky, and was drink-- ing it before. he purchased the Vina Vita.  Witness testi-- fied that he had drunk Vina Vita, and that it would not. make him drunk, but that it would make him sick if he-- drank enough of it; that he could not drink very much. of it.

John Smith testified on behalf of the defendant that: he knew the prosecuting witness, Dave Le Flore, and was- with him on the morning that the sale is alleged to have· been made, and that he was drinking before he got to- town.

Bill Purcell, who was introduced in rebuttal by the- state, testified that he drank some of the Vina Vita in ques-- tion, and in response to the question, "What effect, if any,.

did it have on you?" he answered, "Sick and dizzy about the head."

A number of assignments of error are urged in the brief. A discussion of one, however, will dispose of this controversy. That is based upon the proposition that the state has failed to make a case sufficient to warrant a conviction.

It will be remembered that the amended information charged the defendant with the sale of intoxicating liquor or compound. In order to sustain the information the words "or compound" will be treated as surplusage. The information therefore charges the sale of intoxicating liquor, and the proof shows that the same was a compound, which is also a liquor, commonly kept in drug stores over the state and commonly sold as a proprietary medicine.

Dr. W. G. Short, a public drug and food inspector, testified that the concoction was a proprietary medicine, and was commonly sold in drug stores throughout the State of Oklahoma; that it was not intoxicating.

The proof on behalf of the state does not establish that this liquor is intoxicating liquor, nor that it was an intoxicating compound as to that matter. The most that is established is that five bottles of the stuff were sold, three to Dave Le Flore and two to Bill Purcell, and that it made Le Flore sick and dizzy and made Purcell sick and dizzy. Neither of them says that it made him drunk.

There are a great many compounds used for treating ills of the human race which will render a person sick or dizzy if too much of the same is taken, but will not intoxicate him in the sense that he will become inebriated. The intoxication contemplated by the statute is an alco-

holic one, and a liquor, in order to come under the ban of the law, must contain more than one-half of 1 per cent. alcohol, or a sufficient quantity of it in a liquor or compound capable of being used as a beverage, to intoxicate a human being. Otherwise the prohibitory liquor statute is not applicable. In this case, after filing the amended information, the state should have proved that the liquor was intoxicating or should have dismissed the prosecution. Having failed to prove that the liquor was intoxicating or that it contained more than one-half of 1 per cent. alcohol, the prosecution failed. The judgment should have been an acquittal instead of a. conviction.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.

DOYLE, P. J., and MATSON, J., concur.