## T. C. POPE v. STATE.

No. A-8661.   June 8, 1934.
(33 Pac. [2d] 813.)

C. R. Hunt and Theodore F. Kuker, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Latimer county of the crime of murder in the killing of one Ellis Atohko, and his punishment fixed by the jury at imprisonment in the state penitentiary for the period of his natural life.

It is not deemed necessary to set out the evidence, because the contention of defendant's counsel goes to the

credibility of the state's witnesses rather than the weight and sufficiency of the evidence.

It is first contended the trial court erred in refusing to give defendant's requested instructions on the right of defendant to carry his gun with him and to have it at the time of the commission of the homicide.

The right of defendant to carry his gun on this occasion and to be armed at the time of the killing, was merged in his right of self-defense. If he armed himself and went to the scene of the homicide for the purpose of seeking or provoking a difficulty with the deceased and as a result of such arming himself and seeking a difficulty, a difficulty arose between him and deceased, which resulted in the killing, defendant would not be without fault in bringing on such difficulty, and therefore he would not be entitled to plead the perfect right of self-defense. If, on the other hand, defendant did not arm himself for such purpose and a difficulty ensued, defendant, being in a place where he had a right to be and without fault, could invoke the perfect right of self-defense. The trial judge in his instructions submitted to the jury the right of defendant to defend himself under the circumstances disclosed by the evidence in the case, and the jury was told without equivocation that defendant could resist and had the right to resist any force or offer of force by deceased which was reasonably calculated to make defendant believe, viewing the circumstances from his standpoint, that deceased was about to kill him or to commit some great bodily harm upon him, and that defendant could do this even to the extent of taking the life of deceased if it reasonably appeared to defendant to be necessary.

In Wilkie v. State, 33 Okla. Cr. 225, 242 Pac. 1057, this court held similar instructions sufficient to accord to defendant his right of self-defense.

The instructions in the case at bar were sufficient to cover the law of self-defense from the standpoint of the state's testimony and that of defendant himself. It was not error, therefore, for the trial court to refuse to give the requested instructions covering the same issue.

It is next contended the trial court erred in denying the request of defendant to exhume the body of deceased for the purpose of having a post mortem examination to determine the point of entrance and the point of exit of the bullet which caused death.

The record discloses the trial of the case occurred eight months after the killing. No offer was made by defendant or his counsel to have a post mortem examination shortly after the homicide was committed, or at any time prior to the trial of the case. There is no evidence in the record to show the body of deceased was embalmed prior to its burial, or that it would be in such a state of preservation as to permit an examination from which the evidence sought to be developed could have been obtained with any more accuracy than the testimony of Dr. Booth, who examined the wounds and probed the same the next day after the killing, and before any burial of the body was made. No doubt the trial court took into consideration the fact that after the body had been interred for eight months under the circumstances disclosed at the trial, it would be so decomposed as to render a proper examination impossible.

Applications of this character are addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed unless it affirmatively appears from

the record that such discretion has been abused. It was not error, therefore, for the trial court to overrule the application.

It is next contended the trial court erred in permitting the jury to separate after they had retired to deliberate on their verdict, and to receive information regarding the defendant and the purported offense outside of that produced at the trial.

The record does not support this assignment of error. In support of the motion for a new trial counsel for defendant introduced the testimony of two men who were incarcerated in the county jail at the time the jury were deliberating on this verdict, to show that one of the jurors stuck his head out of the window and talked to some person who was on the ground outside of the courthouse. There is absolutely no evidence to show that the jury separated, and the testimony of these two witnesses fails to disclose that this juror said anything to anybody outside of the jury room, except one of the witnesses says he heard the juror say, "Yes." The state in rebuttal introduced the testimony of ten members of the jury, who testified that no misconduct occurred on the part of any member of the jury, and that there was no communication whatever with any person outside of the jury room. It is apparent, therefore, that there is no merit in this contention.

It is next contended that certain alleged misconduct on the part of the county attorney and on the part of the special prosecuting attorney, Honorable Claud Briggs, should result in a reversal of this judgment.

These assignments of error are contained in the motion for a new trial. The matter complained of occurred at the time the county attorney and special prosecutor were arguing the case to the jury. There was no objec-

tion made to any of this argument, nor was the court requested to instruct the jury respecting the same, nor was any exception taken to any ruling of the court respecting any argument made by either the county attorney or the special prosecutor at the time it is contended such improper conduct and argument was made. The only record before this court is one made in support of the motion for a new trial on these alleged grounds. This court has repeatedly held that matters of this kind must be called to the attention of the trial court at the time the alleged errors occur, and it is too late to raise the question in the motion for a new trial. There must be a recital in the case-made which amounts to a bill of exceptions on questions such as this. Newcomb v. State, 23 Okla. Cr. 172, 213 Pac. 900; Quitman v. State, 35 Okla. Cr. 245, 250 Pac. 441.

It is next contended the trial court erred in the admission of incompetent, irrelevant, and immaterial testimony, and in permitting the prosecuting counsel to ask incompetent and prejudicial questions of defendant as to conviction of crime too remote in point of time.

When defendant takes the witness stand in his own behalf he may be subjected to the same cross-examination as any other witness, and such cross-examination includes, for the purposes of impeachment, the right of the state to interrogate defendant as to whether or not he has ever been convicted of crime. The objection that the questions along this line relate to crimes too remote in point of time goes merely to the weight of such evidence and not to its admissibility. The state introduced evidence that defendant had been convicted of various crimes from several years back and leading up in point of time not far removed from the commission of the homicide.

Under this assignment it is also contended that it was prejudicial error for the state to cross-examine defendant's character witnesses as to their knowledge of previous crimes, convictions, and difficulties of defendant. No objection was made to the admission of this evidence at the time the same was received, but later in the trial defendant's counsel did request the court to take this evidence from the jury, at which time the court sustained defendant's motion and instructed the jury that they could not consider the evidence. Certainly counsel for defendant cannot, under such circumstances, be heard to complain, when the ruling of the trial court was favorable to them the first time they made any objection to the alleged incompetent evidence. Counsel cannot sit silently by and let evidence of this character go to the jury, and then complain of the action of the trial court in taking the same from the consideration of the jury at their request and later instructing the jury not to consider it.

It is next contended the trial court erred and abused its discretion by preventing defendant from proving the correct manner to serve a writ of replevin, and also in refusing defendant the right to introduce a letter written by Honorable Claud Briggs, special prosecutor, to the estranged wife of defendant.

The question of whether or not deceased was serving the writ of replevin in the correct manner is not involved in the merits of this case. Defendant testified that he knew before he went out to meet deceased and carried his Winchester with him that deceased was at his premises for the purpose of serving a writ of replevin upon him, to get possession of a certain stove that the witness Ras Manes claimed belonged to him. The fact that deceased had a right to serve the writ in the absence of defendant but elected to wait until defendant returned to his home

before serving same could have no material bearing on the case.

The letter of Briggs to defendant was written long prior to the commission of the offense, and had no tendency to affect any issue in the case, and its admission was therefore properly refused.

Finally, it is contended the defendant should be granted a new trial because of newly discovered evidence.

A new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court. The newly discovered evidence relied upon is merely evidence to impeach the credibility of the state's witnesses, Ras Manes and Mrs. Ras Manes. These two witnesses were the main prosecuting witnesses and had testified at the preliminary examination of defendant some seven months before the trial of the case. Counsel for defendant, therefore, were in possession of the facts to which these witnesses testified in the final trial.

This court has held in a number of cases that a new trial will not be granted to permit the introduction of impeaching testimony. Caple v. State, 3 Okla. Cr. 621, 105 Pac. 681; Ryal v. State, 16 Okla. Cr. 266, 182 Pac. 253; McKenzie v. State, 34 Okla. Cr. 233, 245 Pac. 1005.

The verdict of the jury is amply supported by the evidence, the instructions fully cover the law of the case, and no error was committed during the progress of the trial that would require a reversal of the judgment. The cause is therefore affirmed.

EDWARDS, P. J., concurs. DAVENPORT, J., absent, not participating.