## JOHN WORKMAN v. STATE.

No. A-10595.   Dec. 11, 1946.

(175 P. 2d 381.)

246

Counts & Jones, of Hartshorne and McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Tom G. Haile, Co. Atty., of McAlester, for defendant in error.

BAREFOOT, J. Defendant, John Workman, was charged in the county court of Pittsburg county with the unlawful possession of intoxicating liquor, to-wit; Thirteen pints of assorted whisky. He was tried, convicted and sen-

tenced to pay a fine of $100, and to serve 60 days in the county jail, and has appealed.

For a reversal of this case, four assignments of error are presented: (1) Error of the court in overruling the demurrer of defendant to the state's evidence; (2) error of the court in overruling the motion of defendant to suppress the evidence; (3) error of the court in overruling the motion of defendant to quash the jury panel; and (4) error of the court in failing to sustain objection of defendant to prejudicial remarks of the county attorney and assistant attorney during argument to the jury.

On May 21, 1943, the residence of the defendant, a two-story rock house, stituated in McAlester, Pittsburg county, was searched by Rex Hawks, a special investigator for the Government and investigator for the State Bureau of Investigation. He was accompanied by Mattie Sawyer, a deputy sheriff of Pittsburg county.

These officers, before searching the premises, procured a search warrant, and as a result of their search found, as shown by the return of the search warrant, "upon and about said premises, intoxicating liquor particularly described as follows: 13 pts of assorted liquor."

Defendant was present at the time the search was conducted. Both Mr. Hawks and Mr. Sawyer testified at the trial to the finding of the liquor by Mr. Sawyer, who searched on the north side of the house. The liquor was in bottles and was delivered to the sheriff of Pittsburg county, who gave his receipt therefor. The liquor was not introduced in evidence, and no demand or request was made by defendant for its production. The officers testified that it was "tax paid whisky," and in pint bottles. At the con-

clusion of the state's case, the defendant rested and offered no testimony.

It is contended by defendant that the witness Hawks could not testify to the finding of the liquor for the reason that it was found by the witness Sawyer, who was out of his presence at the time. The evidence was that the witness Sawyer brought the liquor into the presence of Hawks immediately after finding it, and that it was taken by both of them to the sheriff's office.

It is also contended that the evidence did not show that the liquor found was intoxicating liquor, and the defendant cites in support of his proposition the cases of Estes v. State, 13 Okla. Cr. 604, 166 P. 77, 4 A. L. R. 1135; and Gilliland v. State, 15 Okla. Cr. 635, 179 P. 786.

The facts in the cases cited are not similar to the facts in the instant case. It is unnecessary to refer to them in detail.

Reference is also made to the case of Ike Fowler v. State, 80 Okla. Cr. 86, 157 P. 2d 222, 223. This case does not support the contention of defendant. In the opinion the court says:

"As to whether the liquid seized on that occasion was whisky as alleged in the information, the proof could be made by circumstantial as well as by direct evidence. The fact that the liquid was in a pint bottle with an unbroken Government seal, that is was red in color and had the appearance of whisky and it was labelled 'whisky' was a sufficient showing that the liquor transported by the defendant was whisky, and in the absence of any proof offered on behalf of defendant, was sufficient to sustain the conviction."

Defendant cites the case of Frank Enochs v. State, 81 Okla. Cr. 111, 161 P. 2d 87, 88. This case does not sustain defendant's contention. In the third paragraph of the syllabus, the court says:

"It is unnecessary to produce at the trial the liquor seized by officers in search of accused's premises, where no request is made that such liquor be produced and no question is raised as to the intoxicating quality of the alleged liquors so seized; the testimony of the officers that they found a certain quantity of whisky being sufficient proof of its intoxicating quality as against a demurrer to the evidence."

In the case at bar the officers testified that they found 13 pints of tax-paid liquor on the premises of defendant. The defendant offered no testimony to rebut this, and made no defense. No demand was made that the liquor be produced, nor was any question asked by defendant on cross-examination as to the whereabouts of the liquor, or as to its not being intoxicating. We are of the opinion that the evidence produced by the state was sufficient as against a demurrer to the evidence.

The second assignment of error is that the court erred in overruling the motion to suppress the evidence by reason of an alleged unlawful affidavit and search warrant. Under this assignment of error, it is contended that the affidavit upon which the search warrant was issued only stated conclusions, and not facts. It is unnecessary to give a lengthy discussion of this proposition. In the recent cases of Young v. State, 74 Okla. Cr. 64, 123 P. 2d 294; and Hudgens v. State, 74 Okla. Cr. 56, 122 P. 2d 815, we have had occasion to consider affidavits for the procurement of search warrants almost identical with the one here under consideration. In those cases, the affidavits were

held sufficient, and we fully discussed the terms of affidavits, and the law applicable thereto. We are of the opinion that the affidavit to procure the search warrant in this case was sufficient.

The third assignment of error is with reference to the court's refusal to sustain the motion to quash the jury panel. This raises the most serious question presented.

The facts as they appear in the record and from the testimony offered on the motion, were that a jury consisting of 30 names was drawn in the regular way, for service as jurors for the term. When this case was called for trial, all of the panel had been excused for good cause shown, with the exception of four members. The court, by virtue of Tit. 38 O. S. 1941 § 8, issued an order for 12 jurors to be summoned as a special venire. These jurors were summoned by W. G. Stubbs, the regular bailiff of the county court, who was a regular constable and had been appointed as court bailiff. When the motion to discharge the panel was presented, Mr. Stubbs, who summoned the special venire, was placed upon the witness stand by the defendant. He testified as to the manner of summoning the special venire. He was ordered by the court to summons twelve jurors from "the body of the county." The case was ready for trial at the time he received the order, and the twelve jurors were summoned from four different streets in the city of McAlester. Only two of the jurors lived out-side of the city of McAlester, and they lived in towns in Pittsburg county. The jurors were examined by counsel for defendant as to their residence and qualifications, and the record does not show that any juror was peremptorily challenged, or challenged for cause by defendant. Nor is it disclosed the number, if any, of the special venire were selected as jurors in the case.

The case relied upon and cited by the defendant at the time the motion to quash the panel was made is Fluke v. State, 27 Okla. Cr. 234, 226 P. 118, 120. This was a case in which the defendant was convicted of the crime of murder. The sheriff of the county was ordered to summon a special venire. It was found by the court that the sheriff was a material witness for the state, and the special venire which he had summoned was, upon order of the court, discharged. A bystander, A. C. Peace, was commissioned as a special officer to summons special jurors in lieu of those just discharged. This officer re-summoned nine of the 30 jurors who had been summoned by the sheriff. Most of the jurors summoned were from the city of Vinita, the county seat. Defendant did not exercise all of his peremptory challenges, and none on the special venire were challenged by defendant. The court quite exhaustively discusses what is meant by the term "body of the county," and comes to the conclusion:

"Manifestly, a defendant on trial for his life in a prosecution predicated on evidence purely circumstantial, in a community where the passions of the people have been aroused by the atrocity of the crime charged, has a right to all the statutory safeguards designed to secure an impartial jury. Under such circumstances, both the letter and the spirit of the law providing safeguards against unfairness should be followed. This jury was not selected from the 'body of the county,' as contemplated by statute. *We do not mean to hold that a 'pick-up' jury selected from among the residents of the county seat would be unfair in every case,* but believe that under the circumstances here a selection of a special panel in the manner shown by the record would ordinarily be unfair to the defendant. In this instance it proved harmless, as will later appear."

The court then says:

"After the special venire had qualified both the state and the defendant rapidly waived their remaining peremptory challenges, and but three jurors were selected from this special venire, two of whom resided in distant parts of the county. None of these were challenged peremptorily, so it appears that despite the irregularity in qualifying the special venire, the defendant cannot consistently complain because he waived such right by failing to exercise his peremptory challenges as against every juror so selected."

It will be noted that the defendant in that case had been convicted of murder, and it was shown that there was considerable prejudice against him in the city of Vinita. The case was affirmed.

There is nothing in the record now before us to show that the defendant was prejudiced in this case. The record does not reveal that any peremptory challenges were made to the jurors selected. We are of the opinion that the part of the opinion in the Fluke case where the court says: "We do not mean to hold that a 'pick-up' jury selected from among the residents of the county seat would be unfair in every case," has special application to the instant case.

Defendant also cites the cases of Rhodes v. State, 42 Okla. Cr. 382, 276 P. 698, and Littrell v. State, 21 Okla. Cr. 466, 208 P. 1048; and 21 Am. Jur., p. 563 § 14, and p. 604, § 67.

This court has had occasion in four late cases which are not cited by either the defendant or the state, to consider questions that have a very close bearing on the issues here presented. They are: Pruitt v. State, 60 Okla. Cr. 210, 63 P. 2d 776; Kizer v. State, 64 Okla. Cr. 222, 78 P. 2d 831; Riggs v. State, 64 Okla. Cr. 255, 78 P. 2d 1075; and Donaldson v. State, 73 Okla. Cr. 41, 117 P. 2d 555.

Three of these cases were reversed for the reason that the sheriff, or his deputies, who were material witnesses in the case, were permitted to summons the special venire, and in the other case, the contention was made that the court erred in holding that the sheriff was disqualified by reason of being a material witness. This contention was denied by the court, and the case affirmed.

In the instant case no objection or exception is urged as to the qualification of the party who served the summons for the special panel, and this question is not briefed. The only contention made is that the jury was not summoned from "the body of the county."

It will be noted that in the Fluke case, supra, the special veniremen were nearly all from the city of Vinita, and were all summoned while in the city.

We strongly expressed our view of the statute which provides for the summoning of special veniries for the trial of criminal cases in the case of Kizer v. State, supra. We refrain from quoting therefrom, but we there held that while it is discretionary with the court, this discretion should not be abused, and should be used with caution. We recognize the importance of this issue, both to the defendant and to the state; and counsel in the instant case has asked that we write our views so that all may know the law upon this important issue. This was done in the Kizer case.

The statute above cited provides for a special jury panel after the regular panel has been discharged, and is for the purpose of dispatching the business of the court, without unnecessary delay. We expressed the view in the Kizer case that it should only be used for that purpose. This is a matter within the sound judicial discretion of the

court, and a case will not be reversed unless this discretion has been abused. The facts in the instant case do not justify a finding that the court abused his discretion.

In almost all of the cases cited by the defendant, the charges were for felonies. In the instant case, the defendant was charged with a misdemeanor. There is no proof that defendant was in any way prejudiced, and from a review of the record, we do not find that the court erred in overruling the motion to quash the panel of jurors.

The fourth assignment of error has reference to the closing argument of the county attorney, and the assistant county attorney. We have carefully considered this assignment, and do not find anything which would warrant a reversal of this case by reason of this argument. We deem it unnecessary to quote from the cases, but cite the following: Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646; Wallace v. State, 57 Okla. Cr. 50, 45 P. 2d 164; Wisdom v. State, 56 Okla. Cr. 140, 36 P. 2d 514; Brown v. State, 82 Okla. Cr. 344, 169 P. 2d 772; Orrell v. State, 79 Okla. Cr. 300, 154 P. 2d 779.

For the reasons above stated, the judgment of the county court of Pittsburg county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.