PAUL WILLIAMS v. STATE.

No. A-10941.    April 20, 1949.

(205 P. 2d 1164.)

148

See, also, Ex parte Williams, 83 Okla. Cr. 322, 177 P. 2d 138.

Wm. H. Lewis, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, J. Defendant, Paul Williams, was charged in the district court of Oklahoma county with the crime of murder; was tried, convicted of manslaughter in the first degree by the jury, and sentenced to serve a term of 40 years in the State Penitentiary. From this judgment and sentence he has appealed.

The defendant presents fourteen assignments of error, but in his brief states:

"For the sake of brevity, these grounds, which the defendant is of the opinion are vital and constitute error, will be discussed and authorities cited in support thereof."

He then sets out five assignments of error, which are in substance as follows:

1. Error of the court in admitting incompetent, irrelevant and immaterial and prejudicial testimony and exhibits over the objection and exception of the plaintiff in error.

2. The court erred in permitting evidence of other crimes to be introduced.

3. Error of the court in permitting the amendment of the information prior to the second trial of this case, and the refusal of the court to permit the original information to be introduced in evidence.

4. Because of improper and prejudicial statements made by the assistant county attorney in his closing argument to the jury.

5. Error of the court in refusing to sustain the motion of defendant to direct the exhumation of the body

of the deceased in order that an autopsy could be performed.

The consideration of these assignments requires a short statement of the facts as presented by the record.

Defendant was charged with murder in connection with the killing of Marie Copeland on December 14, 1946, at the home of deceased in the rear of No. 311 North Central, in Oklahoma City. Both defendant and deceased were negroes. Deceased had previously been married to Cleveland Copeland, and had two very small children, who were asleep at her home on the night of the killing, and too young to testify. Deceased and Copeland had been separated and divorced for about six months, and defendant had been living at the home of deceased for a period of about six months prior to the homicide on the early morning of December 14, 1946. A number of witnesses testified that deceased and her former husband were selling whisky at their home and that defendant and deceased continued to sell whisky after he began staying there.

Defendant testified that on Friday morning, December 13, 1946, he and Marie Copeland started quarreling. He testified it was by reason of her wanting to know what he had done with $10 he had taken out of their joint savings. He testified that he left home and went away to keep from arguing with her. Sometime after midnight defendant returned home, and Marie was lying across the bed with her clothing on, and immediately began to question defendant as to where he had been, and about the money. She arose from the bed and went into an adjoining room. He thought she was going to play the Victrola. She returned through the kitchen door and had a soda pop bottle in her hand. He saw that she had been drinking and was mad. His testimony was that he

reached behind the door and took therefrom a 12 gauge shotgun for the purpose of scaring her, and that he did not intend to shoot her. He further testified that she grabbed the gun and in the tussle for the possession of the same, it was accidentally discharged, killing deceased.

It was the contention of the state that deceased was shot in the back of the neck slightly below the left ear, and that the shot ranged upward, coming out in the neck below the chin.

The first and second assignments of error may be considered together.

Defendant's contention as to the admission of incompetent, irrelevant and immaterial evidence is based upon the admission of testimony showing that on or about November 25, 1946, defendant shot at deceased with a pistol in her home, but missed her, and that he afterwards told the two parties of this incident and showed both of them where the shot had entered a dresser drawer. It will be noted that this incident occurred 19 days prior to the homicide on the morning of December 14, 1946. This evidence was developed by cross-examination of defendant, and when he denied making the statement to the two witnesses, both were called in rebuttal and testified that the statements were made by him.

On cross-examination the following evidence was given by defendant:

"Q. What was your purpose in getting the shotgun? A. Just to scare her, no hard feelings toward her whatever. * * * Q. Can you explain how the gun went off unless the hammer was back? A. Well, sir, the only reason I could figure out, the gun in tussling, it hit the corner of the dresser some way. * * * Q. Did you at any time ever intend to shoot or kill Marie? A. We got along too good. Q. Do her any harm whatever? A.

No, sir. Everybody around there can tell you we got along fine."

Defendant then testified that they had only had one little argument during the six months he had lived with her, and at that time she hit him over the eye with a glass, which put fright in him. This was at a time different from that when he shot at her and missed her, the shot entering the dresser drawer. Defendant was handed a photograph and identified the place in the dresser where the shot entered.

Under the above statement of defendant's testimony, we are of the opinion that this questioning was within the scope of proper cross-examination of defendant. Also, this evidence could have been introduced under the holdings of this court to show the state of mind of the defendant at the time of the homicide. Jackson v. State, 84 Okla. Cr. 138, 179 P. 2d 924.

As to the contention that this evidence is not admissible under the rule that it was too remote in time, we call attention to the fact that only 19 days intervened between the two acts.

While, as above stated, we think the evidence was admissible as proper cross-examination, we refer to the case of Tapedo v. State, 34 Okla. Cr. 165, 245 P. 897, 899, cited by defendant, where it is said:

"Under the first assignment it is contended that the evidence of a previous assault of the defendant upon the deceased is proof of a different crime and prejudicial. The previous relations of the parties, ill treatment, and previous assaults and difficulties in homicide cases, where they are not too remote, are generally admissible as showing motive and intent, explaining the mental attitude of the parties, and as throwing light on the offense for which the defendant is being tried; it generally being said that such evidence should be restricted so that the

jury may consider it only for the limited purpose for which it is admitted. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L.R.A. 1917D, 383; Koontz v. State, 10 Okla. Cr. 559, 139 P. 842, Ann. Cas. 1916A, 689; Smith v. State, 3 Okla. Cr. 629, 108 P. 418.

"Here a serious assault was proven only 13 days prior to the homicide, and as the cause of the trouble between defendant and the deceased continued down until it culminated in the homicide, the previous relations are so closely interwoven that it was clearly admissible as tending to shed light upon the killing."

As to the contention that the evidence was proof of another crime and not admissible, see Birkes v. State, 27 Okla. Cr. 350, 227 P. 895; McCollum v. State, 57 Okla. Cr. 381, 48 P. 2d 872.

In view of what has been stated, we do not think this testimony was an attempt to impeach defendant upon a collateral issue. It is a true principle of law that a witness cannot be impeached upon a collateral issue. In the instant case, defendant had been permitted to testify that deceased had hit him in the eye with a bottle only a short while prior to the killing; that he had shot at deceased with a pistol only 19 days prior thereto; and that only defendant and deceased were present when the homicide occurred. Only the defendant could testify. The question of how the killing occurred was highly controversial and this evidence was proper, as stated in the Tapedo case, supra, to show "motive and intent," "explaining the mental attitude of the parties, and as throwing light on the offense for which the defendant is being tried."

In view of what has been stated, it is doubtful if it was the duty of the court to instruct the jury on his own motion limiting the purpose for which such testi-

mony should be considered by them. The court gave the jury 36 separate instructions. Counsel for defendant did not except to a single instruction, and did not offer one requested instruction. No special instruction was requested limiting the purpose for which the jury should consider the testimony complained of. While we recognize the rule that it is the duty of the court to instruct the jury on all matters of law which he thinks necessary for their information in arriving at a verdict, Tit. 22 O. S. 1941 § 856, we have often held that if special instructions are desired by the defendant, he is required by our Code of Criminal Procedure to present such instructions in writing; and it is not error for the court to omit to instruct the jury upon the issues desired, where defendant has not requested such instructions. Dunbar v. State, 75 Okla. Cr. 275, 131 P. 2d 116, 122.

In the Dunbar case it is said:

"Only prejudicial errors raised by exceptions reserved require a new trial, and it is only where we are satisfied that the verdict is contrary to law, or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction whether or not an exception has been taken in the trial court."

This court has held that where the death penalty has been given we will consider the instruction, even though there be no exception taken. And in the Dunbar decision, it is further said:

"The Code of Criminal Procedure provides the method of procedure for requesting instructions, and a defendant may submit to the court written instructions with the request that they be given, and how objections and exceptions shall be preserved. 22 O.S. 1941 §§ 831, 856.

"It has been repeatedly held by this court that it is the duty of counsel for defendant, where he is of the opinion that additional instructions should be given to

reduce them to writing, and request that they be given. If he fails to do so a conviction will not be reversed, unless the court is of the opinion, in the light of the entire record and instructions of the court, that there was a failure to instruct upon some material question of law, and that the defendant has been deprived of a substantial right. Green v. State, 70 Okla. Cr. 228, 105 P. 2d 795; Lee v. State, 67 Okla. Cr. 283, 94 P. 2d 5; Adams v. State, 62 Okla. Cr. 167, 70 P. 2d 821; Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426; Russell v. State, 17 Okla. Cr. 164, 194 P. 242; Williams v. State, 12 Okla. Cr. 39, 151 P. 900."

The second assignment of error has reference to permitting the amendment of the original information. This information was filed on December 20, 1946. It was alleged therein that the homicide was committed by the defendant "shooting her *in the left side of the face and neck.*" The case was first tried with this statement in the information, and the trial resulted in a hung jury. On March 13, 1947, the minutes of the court clerk show that an order was entered upon motion of the state, granting leave to amend the information by striking out the above underlined phrase. The record does not disclose that either the defendant or his attorney was present at the time this order was entered. However, the second trial was not commenced until March 17, 1947. It is provided by Tit. 22 O.S. 1941 § 304 as follows:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

The amendment here was made three days before the second trial began. No demurrer or motion to quash the information was filed. The opening statement of the

county attorney was made, and in it he stated that the state would contend that deceased was shot in the back. The first objection was made when defendant at the end of the trial requested the court to have the body of deceased exhumed and an autopsy made. (Reference will be made to this hereafter.)

The evidence of the witnesses for the state was to the effect that the entrance of the shot was in the back of the neck and that it emerged under the chin. The undertaker, the photographer, and others who examined the body testified to this effect. Defendant offered evidence of gunsmiths who had not examined the body, but who testified as experts, who testified that in their opinions, from the nature of the wounds as described to them and as shown by the photographs of deceased, the entrance of the bullets was from the front and the exit at the back. This was a question of fact for the consideration of the jury.

Under the statute above quoted and the prior decisions of this court construing the same, we are of the opinion that the court did not err in granting the state permission to amend the information by striking the words "in the left side of the face and neck," after the first trial and prior to the second trial. We presume the evidence at the first trial justified this amendment. Tit. 22 O.S. 1941 § 304, and cases cited.

It is next contended that prejudicial error was committed by reason of certain remarks of the assistant county attorney in his closing argument to the jury. This is based upon the following proceedings:

"And thereupon W. N. Mounger, Asst. county attorney, made the closing argument to the jury on the part of plaintiff, The State of Oklahoma, and during the course of said closing argument, the court reporter was called

into the court room, no request having previously been made that the reporter take the arguments of counsel, and thereupon during said last argument to the jury, the following record was made and the following proceedings had, to-wit:

"By Mr. Lewis: Comes the defendant and objects to the county attorney's office referring to the outcome of the former trial and using the word 'guilty' in connection with his argument, which he has just used, and moves that the court admonish the jury not to consider that.

"By the Court: The objection is well taken, and, Mr. County Attorney, that remark is highly prejudicial and entirely unwarranted and the jury will be instructed not to, under any circumstances consider that remark referring to the former trial of this case.

"By Mr. Mounger: I would like the record to show that the remark was made in answer to the argument of defense counsel, William H. Lewis.

"By the Court: Proceed with the argument."

Two facts appear from this record. All of the argument of the assistant county attorney was not taken by the court reporter, and the court sustained the objection of counsel to the statement, and instructed the jury that the remark was "highly prejudicial and entirely unwarranted and the jury will be instructed not to, under any circumstances, consider that remark referring to the former trial of this case." This was a proper procedure by the court. No reference to the outcome of the former trial should have been mentioned. However, an examination of the entire record in this case reveals that reference to the former trial had been made in many instances during the progress of the trial. Testimony of witnesses taken at that trial was read to the jury, and comment made thereon. The jury could hardly have been expected not to know that there had been a former trial

of the case. It was stated by the assistant county attorney at the time that the statement made by him was in answer to argument of counsel for defendant. The record does not disclose the statement made by counsel for defendant.

In the case of Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191, 192, it was said:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel."

See Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646, and Woodruff v. State, 56 Okla. Cr. 409, 41 P. 2d 129.

In Orrell v. State, 79 Okla. Cr. 300, 154 P. 2d 779, 780, it was said:

"Remarks of county attorney in argument to jury objected to as improper will be considered in the light of all of the evidence in the record, and, in order to constitute reversible error, such remarks must be upon some material point which injuriously affected accused's rights."

See, also, Workman v. State, 83 Okla. Cr. 245, 175 P. 2d 381.

From a consideration of the entire record, and the fact the court sustained the objection of defendant and instructed the jury not to consider the same, we are of the opinion that this case should not be reversed by reason of this assignment of error.

It is next contended that the court erred in overruling the motion of the defendant to direct the exhuma-

tion of the body of deceased for the purpose of determining from the location and character of the gunshot wounds whether deceased was shot from the back or from the front.

As above stated, this motion was not made by defendant until all the evidence of both state and defendant had been received, and both sides had rested. The deceased was killed on December 14, 1946. This request was made after the close of the second trial, which was March 21, 1947, an elapse of three months and seven days. Although counsel for defendant had represented him for some time prior to the beginning of the second trial, no request had been made for an autopsy. No doubt the testimony at the former trial had revealed the state's testimony as to the entrance and exit of the bullets that killed deceased. Defendant could have at once determined that it would be the state's contention that the deceased was shot in the back. At the time the motion was denied by the court, there was no evidence in the record or before the court that the body of deceased had been embalmed and was in such a state of preservation that an autopsy would reveal the entrance and exit of the bullets. No doubt the court also considered the fact that there was much evidence in the record by those who had examined the body, including the undertaker and the photographer, as to the exact nature of the wounds and the entrance and exit of the bullets. Photographs of deceased which showed the wounds were in evidence. Two physicians, who testified as experts from facts and the photographs, stated that in their opinions the bullets entered from the back of the neck and the exit was under the chin.

In the case of Pope v. State, 56 Okla. Cr. 57, 33 P. 2d 813, 815, this court said:

"Applications of this character are addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed unless it affirmatively appears from the record that such discretion has been abused. It was not error, therefore, for the trial court to overrule the application."

The facts in the case of Quinn v. State, 54 Okla. Cr. 179, 16 P. 2d 591, cited by defendant, are not applicable to the facts in the case at bar.

For the reasons above stated, the judgment and sentence of the district court of Oklahoma county is affirmed.

JONES, P. J., and BRETT, J., concur.